**Jimmy Earl BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 0985–94.**

Court of Criminal Appeals of Texas.

Jan. 10, 1996.

---

Frank W. Henderson, Beaumont, for appellant.

Edward J. Marty, Assistant Dist. Atty., Tyler and Robert A. Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MALONEY, Judge.

■ Appellant was convicted of delivery of a controlled substance. The jury assessed punishment at forty-five years confinement. The Court of Appeals reversed the judgment.

*Brown v. State,* No. 12–92–0351–CR slip op., —— S.W.2d —— (Tex.App.—Tyler July 29, 1994). We granted the State's petition for discretionary review to determine whether the trial court abused its discretion in denying appellant's challenge for cause of a veniremember.

Before the Court of Appeals, appellant claimed the trial court should have granted his challenge for cause against venireperson Stagner on the ground that she could not follow the law and give full effect to appellant's Fifth Amendment right against self-incrimination. The Court of Appeals set out Stagner's voir dire testimony in full:

Q: (By Mr. Henderson, Defense Counsel) Does anybody feel if Mr. Brown doesn't testify that he must have something to hide? Does anybody feel like that? I know you do, Mr. Nixon.

A: (By Ms. Stagner) I do.

Q: And you're Ms. Stagner; is that correct?

A: Yes.

Q: You feel that way?

A: Yes.

Q: And, again, I was a prosecutor for eight years—

A: Well, I just feel that that's just my personal opinion.

Q: Okay.

A: I just feel that if they're going to be given the opportunity to defend themselves, that if they can they should. That's just my opinion.

Q: So you can't give him his Fifth—

A: I'm not sure I could.

Q: Well, again, when you say, "I'm not sure"—

A: I understand what you're saying, but I want you to realize what I'm saying too, that at this point I'm not sure that I could do that.

Q: In other words, you would expect—if you were in Mr. Brown's situation, you would want to testify and tell your side of the story; is that right?

A: That's correct. That's just the way I feel about it.

Q: I know my mother feels the same way about it, and I probably wouldn't have her on a jury. But the fact that you feel that way that if it were you that would testify, do you think that—I mean, only you can tell me whether—

A: I thought I did.

Q: What I'm getting at—when you say, "it's possible," or "maybe," or, "I think I might," that—I really need a yes or no answer if you can do it. Like I said, if we can assume you onto the jury and you're there, are you telling me and telling Mr. Brown that if he doesn't testify you're going to assume that he has something to hide—

A: That's correct.

Later, the trial judge and defense counsel questioned Ms. Stagner at the bench.

THE COURT: Ms. Stagner, the Court would simply like to inquire if the Court instructs you of the Defendant's right not to testify and if you are instructed and in the event that the Defendant fails to testify, you cannot and must not consider that for any purpose as evidence against him.

MS. STAGNER: Yes, that's what I thought. *I can take instructions,* but he asked me how I felt and that's how I responded.

THE COURT: I understand. I'm just saying could you follow the Court's instructions if you were so instructed by the Court that you could not consider that for any purpose or evidence of guilt?

MS. STAGNER: Well, you're telling me *I would have to.*

THE COURT: Yes, ma'am, but—

MS. STAGNER: So I would say *if I have to, I will.* But he asked me how I felt about it and that's how I responded.

THE COURT: Yes, ma'am. That's fine. Thank you, ma'am.

MR. HENDERSON: Can I just ask her one question about that?

THE COURT: If it's strictly a definition of the law and whether or not she could follow it.

MR. HENDERSON: That's it, Judge. My question is, though, knowing how she feels about it and being able to follow the instruction, you can't—

MS. STAGNER: *I would hope that I'm open-minded enough to follow instructions.*

MR. HENDERSON: I understand, Ms. Stagner, and I'm not trying to argue with you. My question is because of the way you feel, and that's just something everybody brings into the courtroom, the way they feel, do you think that that would affect your ability to follow that instruction in this case? If the judge instructs you to disregard, you can't use the Defendant's failure to testify against him, do you feel that you would do that even though you're instructed not to because you feel that way? I mean, I just know—

MS. STAGNER: *I'm not sure I can answer that* right now.

MR. HENDERSON: That's what—

MS. STAGNER: I understand what you're saying, but you're asking me how I feel and—

MR. HENDERSON: My question is: How do you feel—with that instruction in mind, can you follow that instruction?

MS. STAGNER: *I would hope that I can,* but that's all I can say. I'm sorry *I can't give you a yes or a no.*

MR. HENDERSON: Okay. Knowing that, you know, Mr. Brown needs to—has to rely on these answers that you give here—

MS. STAGNER: I understand.

MR. HENDERSON: —you're saying you can't give a yes or no answer to that question?

MS. STAGNER: *I would try my best.*

(emphasis added). Based on this testimony, the Court of Appeals concluded that although Stagner

naturally refused to tell the judge she would not follow his instructions, a review of her entire examination leaves little doubt that, if chosen to serve on the jury, she would have expected Appellant to testify unless he were guilty.

The court further noted that Stagner's "last word on the subject was that she could only

hope to follow the judge's instructions regarding an accused failure to testify." After reviewing Stagner's testimony as a whole, the court held that she had a bias or prejudice against the law and the trial court abused its discretion in denying appellant's challenge for cause.

■■■ Relying on *Riley v. State*, 889 S.W.2d 290 (Tex.Crim.App.1993) (opinion on rehearing), the State argues that the Court of Appeals erred in its analysis.[1] In *Riley*, the appellant claimed venireperson Brown was improperly excluded because her views on the death penalty would not have "substantially impaired" her performance as a juror. Brown testified that she did not believe in the death penalty and that she could not personally participate in any proceeding that resulted in the handing down of a death sentence. However, after the special issues were explained to her, she testified that if she had taken an oath to answer them, she would "have to" put her personal objections aside and answer them in accordance with the evidence. We noted that "[s]he testified unequivocally that her opposition to the death penalty would not substantially impair her ability to follow her oath and render a true verdict." *Id.* at 297. We further emphasized that Brown never wavered in stating that she would answer the issues affirmatively if convinced beyond a reasonable doubt by the evidence. In holding that Brown should not have been excluded, we wrote

> [t]hat it would be difficult, or even that it would unquestionably violate her conscious, however, does not lend support to a finding that Brown was substantially impaired.... So long as she consistently affirmed that she could in fact answer the special issues in accordance with the evidence, neither the difficulty she may have in doing so, nor the fact it might violate her conscience, renders her a 'vacillating' venireman in any material sense.

*Id.* at 300. In other words, nothing is left to the discretion of the trial court when the venireperson is unequivocal as to their ability to follow the law. If they testify unequivo-

cally that they *can* follow the law despite personal prejudices, the trial court abuses its discretion in allowing a challenge for cause on that basis. Likewise, if they testify unequivocally that they *cannot* follow the law due to their personal biases, the trial court abuses its discretion in failing to grant a challenge for cause on that basis. However, when the venireperson vacillates or equivocates on their ability to follow the law, the reviewing court must defer to the trial court's judgment. *Id.*

The State contends the facts in this case are similar to those in *Riley* because Stagner unequivocally answered that she could follow the instructions of the trial court. Thus, the State argues appellant's challenge for cause was properly denied. In the alternative the State argues that if Stagner's testimony could be construed as equivocal, the Court of Appeals should have deferred to the trial court.

Upon careful review of Stagner's testimony, we conclude it is not similar to Brown's testimony in *Riley*. Brown did not equivocate as to her ability to follow the law; she answered "yes" consistently to questions about whether she could set aside her personal beliefs and follow the law. Only once did she answer "I guess I would have to." By contrast, Stagner's answers in the instant case were equivocal. At one point Stagner said "if I have to [follow the instructions], I will," indicating that she *would* be able to follow the law, but at other times she stated that she did not know and could not give a yes or no answer as to whether she would be able to set aside her personal biases and follow the court's instructions.

Although Stagner did not vacillate between two definitives—that is, between stating that she definitely *would* be able to follow the law and stating that she definitely *would not* be able to follow the law—she did vacillate between stating that she *would* be able to follow the law, and stating that she *did not know for sure* whether she could follow the law. As noted above, *Riley* reiterated the rule that when the record reflects a vacillat-

1. *Riley* was handed down after the Court of Appeals issued its opinion. However, because the cases are factually distinguishable, a remand to the Court of Appeals is unnecessary and we can reach the merits of this case.

ing venireperson, the reviewing court is bound by the trial court's judgment in the matter. *Id.; see also Perillo v. State,* 758 S.W.2d 567, 577 (Tex.Crim.App.1988) (when faced with record showing truly vacillating venireperson, reviewing court must afford great deference to trial court's discretion). While we might be inclined to agree with the Court of Appeals that the record reviewed as a whole portrays a venireperson who probably would not be able to set aside her personal biases against the law, we are nevertheless bound to defer to the ruling of the trial court in these circumstances. *Id.* The Court of Appeals erred in failing to so defer.[2] Accordingly, the judgment of the Court of Appeals is reversed and the judgment of the trial court is reinstated.

OVERSTREET, J., not participating.

---

2. By failing to defer to the trial court in the case of a vacillating venireperson the Court of Appeals applied an improper standard of appellate re-view. Accordingly, we are correcting the Court of Appeals on the law, not on the facts. *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App.1992).