Cesilee **HYDE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 03–96–00608–CR.

Court of Appeals of Texas, Austin.

May 14, 1998.

---

David B. Fannin, Austin, for Appellant.

Ronald Earle, District Attorney, Lisa Dotin Stewart, Assistant District Attorney, Austin, for State.

Before JONES, KIDD and DALLY,* JJ.

JONES, Justice.

Around 2:00 a.m. on June 2, 1995, as she drove home following an evening spent drinking with friends in several nightclubs, appellant Cesilee Hyde struck and killed Austin police officer Drew Bolin. The incident took place on Interstate 35, where Bolin was working at the scene of a traffic accident. Appellant's blood alcohol level was determined to be 0.16. A jury found appellant guilty of intoxication manslaughter and assessed punishment at imprisonment for five years. *See* Tex. Penal Code Ann. § 49.08 (West 1994).

Appellant's brief contains five points of error, four of which assert that the district court erred by overruling her motions to quash the indictment and to change venue, by granting the State's challenge for cause to a venire member, and by instructing the jury on the law of good-conduct time and parole. The State responds that appellant waived all but the last of these contentions by admitting her guilt during her testimony at the punishment stage of trial, citing what is commonly called the *"DeGarmo* doctrine." Correctly anticipating the State's position, appellant's first "point of error" argues that this doctrine should not be applied in this cause.

We agree with the State that appellant admitted her guilt at the punishment stage, but we decline to apply the *DeGarmo* doctrine to the errors alleged by appellant. We will consider each of appellant's points of error on its merits and, finding no reversible error, we will affirm.

## Waiver

### 1. The *DeGarmo* doctrine

The Court of Criminal Appeals has long held that a defendant who testifies at the punishment stage and admits her guilt of the offense for which she has been convicted waives any error that might have occurred at the guilt stage of the trial. The court recently reaffirmed this waiver rule, writing:

> Over the years we have developed a doctrine of waiver akin to the doctrine of curative admissibility. Under this doctrine, error occurring at the guilt/innocence phase of the trial is deemed to be waived if the defendant admits his guilt to the charged offense. For example, in *Richardson v. State*, 458 S.W.2d 665 (Tex. Cr.App.1970), the defendant voluntarily testified at the punishment phase of his trial, admitted the charged offense of rape, and asked the jury for mercy. On appeal, the defendant contended the trial court erred in denying his motion to suppress the in-court identification of the prosecutrix and challenged the sufficiency of the evidence to support the conviction. We held the defendant could not question the sufficiency of the evidence or the in-court identification after voluntarily confessing.
>
> . . . .
>
> In *DeGarmo v. State*, 691 S.W.2d 657 (Tex.Cr.App.1985), we again addressed the issue of whether a defendant could chal-

---

* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

lenge the sufficiency of the evidence, on appeal, after admitting his guilt to the crime for which he has been convicted. At the time of our consideration of *DeGarmo*, the parties agreed that if a defendant did not testify at the guilt stage of the trial, but testified at the punishment stage of the trial, and admitted his guilt, he had, for legal purposes, entered the equivalent of a plea of guilty. The *DeGarmo* Court wrote:

> ... The law as it presently exists is clear that such a defendant not only waives a challenge to the sufficiency of the evidence, *but he also waives any error that might have occurred during the guilt stage of the trial.*

*Id.,* 691 S.W.2d at 661. The Court reaffirmed the doctrine of waiver and overruled DeGarmo's challenge to the sufficiency of the evidence....

Because of the infamy of the case, this concept of waiver has come to be known as the *DeGarmo* doctrine. The *DeGarmo* doctrine has been described as a common-sense rule of procedure because the function of trial is to sift out the truth from a mass of contradictory evidence. Stated another way, [t]he basic purpose of a trial is the determination of truth. When the defendant testifies and judicially confesses to the charged offense, the purpose of the trial process has been served—the truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied. No reversible error should occur where the defendant has satisfied the necessity of the trial process.

*McGlothlin v. State,* 896 S.W.2d 183, 186–87 (Tex.Crim.App.1995) (citations, footnotes, and quotation marks omitted). In *McGlothlin,* the court invoked the *DeGarmo* doctrine to overrule the defendant's contention that the trial court had erroneously admitted extraneous offense evidence during the guilt stage of his trial. The court ruled that the defendant waived the error by admitting his guilt during his punishment stage testimony. *Id.* at 189.

Appellant argues that the *DeGarmo* doctrine conflicts with the holdings in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). This contention was considered and rejected by the Court of Criminal Appeals in *McGlothlin.* 896 S.W.2d at 188. Appellant also criticizes the *DeGarmo* doctrine because it does not "recognize" the constitutional and statutory safeguards necessary for a knowing and voluntary admission of guilt. Appellant does not contend, however, that her testimony was involuntary or that she did not understand all the consequences of her decision to testify.

## 2. Appellant's testimony

■ For the *DeGarmo* doctrine to apply, the defendant must unequivocally admit her guilt during her punishment stage testimony. *See McGlothlin,* 896 S.W.2d at 188; *Smyth v. State,* 634 S.W.2d 721, 724 (Tex.Crim.App. 1982); *Williams v. State,* 930 S.W.2d 898, 900 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). Appellant contends her trial testimony did not constitute such an unequivocal confession.

Appellant was questioned by defense counsel as follows:

Q  Cesilee, before we go through the rest of the events of the evening, I want to ask you: Do you accept the jury's verdict of guilty in this case?

A  Yes, sir, I do.

Q  When you had this accident, was your—were your faculties impaired because of the alcohol?

A  Yes, sir. Looking back, yes, they were.

Q  And did you cause Drew Bolin's death?

A  Yes, sir, I did.

. . .

Q  Okay. Also, do you dispute at this point the blood alcohol reading that the expert testified to?

A  I can't. No.

Later, during cross-examination, appellant was questioned by the prosecutor:

Q  Do you admit that everything alleged in the indictment against you is true and correct?

A  Yes, sir.

■ In response to her attorney's questions, appellant admitted all the elements of intoxication manslaughter. *See* Penal Code § 49.08. Moreover, appellant confirmed during crossexamination that all the allegations in the indictment were true. This alone constituted a judicial confession sufficient to sustain her conviction. *Dinnery v. State,* 592 S.W.2d 343, 352 (Tex.Crim.App.1980) (opin. on reh'g). Because appellant unambiguously confessed her guilt during her punishment stage testimony, she waived any error to which the *DeGarmo* doctrine applies.

### 3. Application of *DeGarmo* in this cause

The State contends that by confessing her guilt during her punishment stage testimony, appellant waived her right to complain of *any* prior error, including the overruling of her motions to quash the indictment and to change venue and the granting of the State's challenge for cause to a venire member. Appellant responds that, to date, the *DeGarmo* doctrine has been applied only to challenges to the legal sufficiency of the evidence and to questions regarding the admissibility of evidence at the guilt stage. *See McGlothlin,* 896 S.W.2d at 186–87 (collecting cases). She argues that the doctrine should not be extended to pretrial errors or to errors during jury selection. Another court of appeals has refused to apply *DeGarmo* to jury selection error. *See Post v. State,* 936 S.W.2d 343, 348 (Tex.App.—Fort Worth 1996, pet. ref'd).

In *DeGarmo,* the court wrote that a defendant who admits guilt at the punishment stage "has, for legal purposes, entered the equivalent of a plea of guilty." 691 S.W.2d at 661. A plea of guilty waives all nonjurisdictional defects occurring prior to entry of the plea. *Jack v. State,* 871 S.W.2d 741, 743 (Tex.Crim.App.1994). In *McGlothlin,* however, the court described the *DeGarmo* doctrine as "a doctrine of waiver akin to the doctrine of curative admissibility." 896 S.W.2d at 186. Under the doctrine of curative admissibility, a defendant who offers the same evidence to which he earlier objected waives any error regarding the admission of the evidence. *Maynard v. State,* 685 S.W.2d 60, 65 (Tex.Crim.App.1985). By analogizing the *DeGarmo* doctrine to the doctrine of curative admissibility, *McGlothlin* supports appellant's argument that *DeGarmo* applies only to errors in the admission of evidence.

Further support for appellant's position is found in *McGlothlin*'s stated justification for the *DeGarmo* doctrine: "When the defendant testifies and judicially confesses to the charged offense ... the truth has been determined and the purpose of the guilt/innocence phase of the trial has been satisfied. No reversible error should occur where the defendant had satisfied the necessity of the trial process." 896 S.W.2d at 187 (footnote omitted). In effect, the defendant's testimonial confession moots any errors that might have contributed to the finding of guilt. This suggests that a defendant's admission of guilt at the punishment stage waives only those errors relevant to the determination of guilt.

■ The State argues that appellant waived her contention that the district court erroneously granted the State's challenge for cause to a venire member. The challenge was based on the panelist's inability to consider the full range of punishment for the charged offense. The Court of Criminal Appeals recently held that voir dire error regarding a subject that a jury would consider only during the punishment phase of a trial is error affecting punishment only, and reversal for such error entitles the defendant to a new trial as to punishment only. *Ransom v. State,* 920 S.W.2d 288, 298 (Tex.Crim.App. 1996) (opin. on reh'g); *see* Tex.Code Crim. Proc. Ann. art. 44.29(b), (c) (West Supp. 1998). The *DeGarmo* doctrine does not apply to punishment phase errors. *McGlothlin,* 896 S.W.2d at 188. Since appellant's alleged jury selection error is relevant only to punishment, appellant's admission of guilt during her punishment testimony cannot be said to have cured the error. *See Post,* 936 S.W.2d at 348.

■ The State also argues that appellant's trial testimony waived her point of error complaining of the overruling of her pretrial motion to change venue. Like the jury selection issue, the alleged venue error is relevant to punishment because the right to a trial free of unfair prejudice logically extends both to the adjudication of guilt and to the determination of punishment. While an admission

of guilt at the punishment stage may put to rest any question whether the failure to change venue resulted in an unfair conviction, it does not moot the question whether the jury's punishment determination was unfairly influenced by local prejudice.

■ Finally, the State urges that appellant's trial testimony waived her point of error complaining of the overruling of her motion to quash the indictment. The purpose of a motion to quash is to give the accused fair notice of the accusation against which she will have to defend. *State v. Carter*, 810 S.W.2d 197, 199 (Tex.Crim.App. 1991). This is an interest unique to the guilt stage of trial. Thus, applying the reasoning of *McGlothlin*, appellant's admission of guilt "satisfied the necessity of the trial process" with respect to the motion to quash. But because the Court of Criminal Appeals has never applied the *DeGarmo* waiver doctrine to a pretrial ruling, we will, in an abundance of caution, also address the merits of this point of error.

For the reasons stated, we decline to hold that appellant waived her points of error by admitting her guilt during her punishment stage testimony. We now turn to the merits of appellant's contentions.

### Points of error

#### 1. Motion to quash

Count one of the indictment in this cause contains two paragraphs. Both counts allege the offense of intoxication manslaughter using language that tracks Penal Code section 49.08, with the only difference between them being the definitions of intoxication on which they rely. *See* Tex. Penal Code Ann. § 49.01(2)(A), (B) (West 1994).[1] Appellant moved to quash both paragraphs because they did not allege a culpable mental state. Section 49.08 does not expressly require a culpable mental state, but appellant argues that one was required by Penal Code section 6.02(b). Tex. Penal Code Ann. § 6.02(b) (West 1994). Under section 6.02(b), if the definition of an offense does not prescribe a

culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element. Section 49.11, which expressly dispenses with any mental element for chapter 49 offenses, was not in effect when this offense occurred. *See* Tex. Penal Code Ann. § 49.11 (West Supp.1998).

Former section 19.05(a)(2), the statutory predecessor to current section 49.08, also did not prescribe a culpable mental state. *See* Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, 1987 Tex. Gen. Laws 1698. Section 6.02(b) notwithstanding, the Court of Criminal Appeals held that no culpable mental state was required for the offense of involuntary manslaughter under section 19.05(a)(2) because intoxication was an essential element of the offense. *Hardie v. State*, 588 S.W.2d 936, 938 (Tex.Crim.App.1979). The court relied on its earlier holding in *Ex parte Ross*, 522 S.W.2d 214 (Tex.Crim.App.1975), that no culpable mental state was required for the offense of driving while intoxicated.

■ We recently followed the holding in *Ross* in a prosecution for driving while intoxicated under section 49.04. *See Sanders v. State*, 936 S.W.2d 436, 438 (Tex.App.—Austin 1997, pet. ref'd); *see also* Tex. Penal Code Ann. § 49.04(a) (West Supp.1998). Given the *Hardie* court's reliance on *Ross*, and for the reasons stated in *Sanders*, we conclude that *Hardie* is dispositive of appellant's contention. Proof of a culpable mental state was not required in this prosecution under section 49.08 for intoxication manslaughter, even though the offense arose before the effective date of section 49.11. The district court did not err by overruling the motion to quash. Point of error five is overruled.

#### 2. Motion to change venue

Appellant contends the district court erred by refusing to order a change of venue. Appellant's original motion to change venue alleged that extensive coverage of this offense in the news media had created so great a prejudice against her that she could not

---

1. A second count alleging the offense of manslaughter was abandoned by the State. *See* Tex.

Penal Code Ann. § 19.04 (West 1994).

obtain a fair and impartial trial in Travis County. *See* Tex.Code Crim. Proc. Ann. art. 31.03(a)(1) (West 1989). The motion also alleged that a group of influential individuals and organizations was engaged in a campaign to deny her a fair trial. *See* art. 31.03(a)(2). The motion was supported by the affidavits of two residents of Travis County. The State filed eight affidavits controverting the motion. *See* art. 31.04. Appellant later filed a supplemental change of venue motion complaining that the State had deliberately leaked information to the press for the purpose of prejudicing appellant's defense. The supplemental motion was not supported by affidavit. These motions were overruled by the district court following a hearing. Appellant subsequently filed two more supplemental motions repeating the allegations previously made. The second supplemental motion, which also was not supported by affidavit, was overruled by the court without a hearing. The third supplemental motion, which was supported by affidavit, was filed four days before trial began and was not ruled on by the court.

▮▮▮ A defendant seeking a change of venue bears a heavy burden to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial trial is doubtful. *McGinn v. State,* 961 S.W.2d 161, 163 (Tex.Crim.App.1998); *Drone v. State,* 906 S.W.2d 608, 618 (Tex. App.—Austin 1995, pet. ref'd). A motion for change of venue is addressed to the discretion of the trial court and an appellate court may reverse only for an abuse of discretion. *McGinn,* 961 S.W.2d at 163; *Drone,* 906 S.W.2d at 618. The trial court's decision will not be disturbed on appeal so long as it is within the realm of reasonableness given the record that was before it. *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App.1992); *Drone,* 906 S.W.2d at 618.

▮▮▮ The appellate record does not contain the hearing on appellant's motion to change venue. *See* former Tex.R.App. P. 50(d) (in effect when the record was filed). We have reviewed the affidavits filed by appellant and the State. Appellant's affiants stated that there was such a prejudice against appellant in Travis County that she could not receive a fair trial; the State's affiants disputed this. Appellant's affiants did not confirm her allegation of a dangerous combination against her; the State's affiants denied that such a combination existed. Given this record, it cannot be said that the district court abused its discretion by overruling the motion for change of venue. Point of error three is overruled.

### 3. State's challenge to venire member

Appellant contends the district court erred by granting the State's challenge to venire member number thirty, Lupe Anguiano, on the ground that she was biased against a phase of the law on which the State was entitled to rely. *See* Tex.Code Crim. Proc. Ann. art. 35.16(b)(3) (West Supp.1998). During the State's voir dire of the jury panel, Anguiano made no comment when the prosecutor discussed the range of punishment for intoxication manslaughter. But when the subject of probation came up during defense counsel's voir dire, Anguiano said, "I can relate to this case some because I would never be able to punish penitentiary because of the fact that I believe in rehab and probation, and probation is not an easy time. It is a sentence, you know." She explained that her opinion was based on her son's experience following a conviction for driving while intoxicated, for which he apparently was assessed a probated sentence. She added, "I'm much for rehab because penitentiary would not do anything for a young person."

Anguiano was later questioned individually by the prosecutor:

[Prosecutor]: Hi. I'm sorry, Ms. Anguiano. You said that you could never give penitentiary time in this type of case?

Ms. Anguiano: I don't believe I could.

[Prosecutor]: Okay. Do you think that you could ever assess the maximum punishment in a case like this, which is 20 years in prison?

Ms. Anguiano: No, I don't think so.

[Prosecutor]: Under any set of circumstances?

Ms. Anguiano: Not in a case like this. I don't think I could.

Defense counsel immediately sought to rehabilitate the panelist. He told her "to take [appellant's] age out of consideration" and to "[a]ssume that it's not a young person." He then asked if she could "envision a set of circumstances where you would send a person my age to the penitentiary for 20 years for this type of offense. I'm 43." Anguiano replied, "Being that liquor was the one that cause this accident, I feel that still—go for the rehab. . . ." The court then questioned the panelist:

> The Court: You could not consider 20 years for this offense?
>
> Ms. Anguiano: No. Maybe if he had been a repeat offender, then I would consider sometime like 15 years or something.
>
> The Court: What about 20 years?
>
> [Defense counsel]: Especially if he had no remorse.
>
> Ms. Anguiano: Twenty years. If he didn't have any remorse, then maybe I would consider after hearing all the facts.
>
> The Court: State want to ask her any questions?
>
> [Prosecutor]: . . . This is the last time we'll get a chance to talk to you and I've heard you kind of, you know, say a couple of different things. And really you're the only one who knows whether you personally can really ever sentence someone to 20 years in prison for an unintentional crime that was caused by accident, okay?
>
> That's the bottom line, because that's what the law is and that's what the law will require you to be able to do if you serve as a juror in this case. Now, you're the only one that knows. You have to look inside, and there's no right or wrong answer. If you can't do it, that's fine.
>
> Ms. Anguiano: I don't think I can do it.

At this point, the State challenged Anguiano for cause. The challenge was sustained.

A venire member who cannot consider the full range of punishment is properly challengeable for cause by the State. *Narvaiz v. State*, 840 S.W.2d 415, 427 (Tex.Crim. App.1992). Appellant argues that while Anguiano indicated she generally would not impose the maximum punishment for intoxication manslaughter, she was shown to be willing to assess the maximum punishment in an appropriate case. Thus, appellant contends Anguiano was not biased against the law and the court abused its discretion by granting the State's challenge for cause.

In reviewing challenges for cause, an appellate court may not disturb the decision of the trial court absent a showing of an abuse of discretion. *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex.Crim.App.1993). An appellate court reviews a cold record while the trial court had the opportunity to view the panelist's demeanor and determine her credibility. For this reason, an appellate court must examine the record as a whole to determine whether there is support for the trial court's decision, and the trial court's ruling must be afforded great deference. *Id.* If a venire member equivocates on her ability to follow the law, the reviewing court must defer to the trial court's judgment. *Brown v. State*, 913 S.W.2d 577, 580 (Tex.Crim.App. 1996).

Considering the totality of Anguiano's remarks, her attitude with respect to the proper punishment for intoxication manslaughter was reasonably clear. She favored probation in such cases and was definitely opposed to a maximum term of imprisonment. Although she once conceded that she might consider the maximum term in an appropriate case, she immediately contradicted herself and reaffirmed that she would be unable to consider imprisonment for twenty years. The district court did not abuse its discretion by granting the State's challenge. Point of error four is overruled.

### 4. Jury instruction regarding parole and good-conduct time

To understand appellant's last point of error, it is important to note that the jury, as part of its verdict at the guilt stage, found that appellant used a deadly weapon during the commission of the offense. *See* Tex.Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp.1998). As a consequence, appellant will not become eligible for parole until her actual calendar time served, without consideration of good-conduct time, equals one-half her sentence. *See* Act of May 27, 1995, 74th

Leg., R.S., ch. 260, § 17, 1995 Tex. Gen. Laws. 2207, 4276 (Tex.Code Crim. Proc. Ann. art. 42.18, § 8(b)(3), since repealed and codified at Tex. Gov't Code Ann. § 508.145(d)). Further, she will not be eligible for release to mandatory supervision. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 6.02, 1993 Tex. Gen. Laws. 3586, 3761 (Tex.Code Crim. Proc. Ann. art. 42.18, § 8(c), since repealed and codified at Tex. Gov't Code Ann. § 508.149(a)(1)). Thus, the award of good-conduct time while in prison will not hasten appellant's eligibility for parole (because good-conduct time cannot be considered) or her release to mandatory supervision (because she is not eligible for such release).

The district court's jury charge at the punishment stage included the mandatory statutory instruction on good-conduct time and parole. Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a) (West Supp.1998). In pertinent part, this instruction told the jury:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time....

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, she will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 10 years, whichever is less, without consideration of any good conduct time....[2] Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if she is sentenced to imprisonment, because the application of these laws will depend upon decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Appellant objected to the statutory instruction on the ground that "it just flat misstates the law" with respect to good-conduct time. Appellant asked that all references to good-conduct time be stricken from the statutory instruction "since under the law good conduct time cannot possibly affect this defendant's sentence, and it gives the jury a consideration that they shouldn't have at this time." The court overruled the objection, but added an additional paragraph to the charge immediately following the statutory instruction:

Under the law applicable to this case if the defendant is sentenced to a term of imprisonment she can only be released on parole or when the sentence is served in its entirety. She will not be entitled to good time credit.

Appellant stated that she had no objection to the additional paragraph, but reaffirmed her objection to the statutory instruction.

Appellant now contends that she was denied due process and due course of law because "the instruction raised issues which were not appropriate for jury consideration—good conduct time and parole. Under the law applicable to appellant's case, she was not entitled to good conduct time, so no such instruction should have been given by the court...." Appellant adds that "the instruction insinuates that somehow appellant may be eligible for parole and good conduct time.... This was wrong." *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, § 19.

*Appellant's argument that she will not be eligible for parole is incorrect.* She will become eligible for parole when she has served one-half of her sentence. If appellant means to argue that she will not be eligible for mandatory supervision, the statutory instruction does not mention that subject and cannot be labeled misleading in that regard.

The statutory instruction on good-conduct time and parole has been upheld against due

2. The court modified the statutory charge with regard to the calculation of parole eligibility to take into account the twenty-year maximum term of imprisonment for second degree felonies. Appellant does not complain of this.

course of law and due process of law challenges. *See Oakley v. State,* 830 S.W.2d 107, 111–12 (Tex.Crim.App.1992); *Muhammad v. State,* 830 S.W.2d 953, 956 (Tex.Crim.App. 1992). Considering the instructions given as a whole, we are not persuaded to reach a different conclusion in this cause. The jury first was told, in accordance with article 37.07, section 4(a), that appellant *may* earn *time off* the period of incarceration imposed through the award of good-conduct time. The instruction correctly described the calculation of appellant's parole eligibility, and specifically informed the jury that good-conduct time would not be considered in that calculation. The jury was warned that the award of good-conduct time cannot be predicted and was told not to consider the extent to which good-conduct time might be awarded to appellant. Finally, in the supplemental instruction, the court attempted to answer appellant's objection to the statutory instruction by telling the jury that appellant would *not* receive good-conduct time credit. The instructions given did not misstate the law of good-conduct time and parole.

Even if the instructions fostered confusion with regard to good-conduct time, there was no harm. Neither good-conduct time nor parole was mentioned during counsel's punishment arguments. There is no evidence the jury was confused about these subjects. No motion for new trial was filed and nothing in the record suggests that the jury discussed, considered, or tried to apply good-conduct time or the parole law in assessing punishment. In the absence of evidence to the contrary, we must assume the jury read and followed the instructions as given. *See Williams v. State,* 937 S.W.2d 479, 490 (Tex.Crim.App.1996). We are satisfied beyond a reasonable doubt that any error in the court's instructions regarding good-conduct time and parole did not contribute to *the punishment assessed by the* jury. Tex.R.App. P. 44.2(a). Point of error two is overruled.

The judgment of conviction is affirmed.