Timothy **ROBINSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–97–00941–CR.

Court of Appeals of Texas, Houston (1st Dist.).

April 1, 1999.

---

Buddy Stevens, Angelton, for appellant.

Jerome Aldrich, David Bosserman, Angleton, for appellee.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MIRABAL, J.

A jury found appellant, Timothy Robinson, guilty of sexual assault. The trial court assessed punishment at 45 years confinement. We affirm.

At trial, complainant testified that on August 20, 1996, she was working the graveyard shift at a convenience store. She stated that appellant entered the store at approximately 2:30 a.m. and hung around and spoke with her for about an hour. Complainant then said she had to get back to work and thought that appellant left the store. However, when she went to the back room to get a mop bucket, appellant followed her into the room and startled her. Complainant jumped back when appellant took a step toward her. Appellant told complainant that he did not want to scare her. She tried to get to the door, but appellant reached out and touched her on the wrist. Complainant screamed when appellant shut the door. Appellant told complainant, "Don't make me hurt you," and made her walk to another room at the back of the store.

Complainant further testified that she was afraid and believed appellant would hurt her if she did not do what he said. She stated that she was thinking about her cousin who had been assaulted, robbed, and beaten to death with a Coke bottle. She testified that she just wanted to live—she did not want to die. Complainant testified that appellant was bigger than she was and she believed he was capable of harming her.

Complainant further testified that appellant ordered her to take off her pants. She unbuttoned the top button of her pants but did not remove her pants. Instead, she began to try to persuade appellant to leave her alone. She told appellant that there might be a surveillance camera in the room like the one in the front of the store, and that customers might be in the store. Complainant

testified that she also told the appellant "no," but that he took off her pants. Complainant stated that she then voluntarily sat down on the floor because she did not want to get hurt by being shoved down. Appellant climbed on top of complainant and, without her consent, had sexual intercourse with her.

Complainant testified that appellant let her get up from the floor and then he asked her if she was okay. Complainant told appellant that she was all right so he would not hurt her further. Appellant asked complainant if she intended to call the police. Complainant told appellant she would not call the police so that he would allow her to return to the front of the store. A customer was waiting at the counter when complainant and appellant returned to the front of the store. While appellant stood beside her, complainant handled the transaction, and the customer left the store. Complainant testified that she did not mention the assault to the customer because appellant was nearby and she was afraid that if she said anything appellant would harm her or the customer.

Complainant further testified that after the customer left the store, appellant asked her again if she was okay. He told her that he was not a rapist and asked her again if she intended to call the police. Complainant told him that she would not call the police and she just needed to get back to work. Appellant shook complainant's hand a couple of times, hugged her, kissed her on the cheek, and then left the store. After appellant left the store and drove away, complainant immediately locked the doors and called the police.

In points of error one and two, appellant asserts the trial court erred in overruling his motion to excuse venire members Shatto and Parsons. Appellant argues Shatto and Parsons should have been excused for cause because they were unable to disregard appellant's failure to testify.

■ In reviewing challenges for cause, an appellate court may not disturb the decision of the trial court absent a showing of an abuse of discretion. *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex.Crim.App.1993); *Hyde v. State*, 970 S.W.2d 81, 88 (Tex.App.—Austin 1998, pet. ref'd). An appellate court reviews a cold record while the trial court had the

opportunity to view the panelist's demeanor and determine her credibility. *Satterwhite*, 858 S.W.2d at 415. For this reason, an appellate court must examine the record as a whole to determine whether there is support for the trial court's decision, and the trial court's ruling must be afforded great deference. *Id.*

■ If a venire member equivocates on her ability to follow the law, the reviewing court must defer to the trial court's judgment. *Brown v. State*, 913 S.W.2d 577, 580–81 (Tex.Crim.App.1996); *Hyde*, 970 S.W.2d at 88. However, nothing is left to the trial court's discretion when the venireperson is unequivocal as to their ability to follow the law. *Brown*, 913 S.W.2d at 580.

The entire voir dire colloquy with venire members Shatto and Parsons about a defendant testifying follows:

Appellant's Counsel: Anybody else on that second row—getting back to the defendant not testifying and the defendant not presenting any evidence whatsoever and just saying, "Well, I understand the water level, the evidence level, the water level has not been brought up high enough—does anybody think that would be a bad situation for you as a juror? Anybody else on the second row? Third row? Mr. Shatto, no evidence whatsoever by the defense. Are you—

Mr. Shatto: I would have a real problem with it, with the defendant not getting up and saying he's innocent.

Appellant's Counsel: And, of course, do you think that you would hold that against him?

Mr. Shatto: If I was sitting in that chair and I was innocent and I didn't want to get up there and tell the Court and jury I was innocent—I would.

Appellant's Counsel: I know a lot of people—that's a lot of people's views on these cases. Are you uncomfortable with that situation? In other words, as a juror, you think you might tend to hold that against him?

Mr. Shatto: Possibly.

Appellant's Counsel: Mr. Bessey? Am I saying that right?

Mr. Bessey: Yes.

Appellant's Counsel: How do you feel about what Mr. Shatto said, about the defendant not testifying?

Mr. Bessey: Well, if he doesn't testify, that's his right in the court of law not to. It doesn't matter to me whether he testifies or not. It depends what's presented in front of me. I hold no opinion, really, on it.

Appellant's Counsel: Same situation with no evidence?

Mr. Bessey: Yeah. You have to present evidence to form an opinion, right?

Appellant's Counsel: Okay. Thank you, sir. Mrs. Parsons, do you have a strong feeling about an accused not testifying?

Mrs. Parsons: No, sir. I feel the same as Mr. Shatto does, you know, wanting to hear him admit, you know, he didn't commit the crime.

Appellant's Counsel: Take the position, in other words?

Mrs. Parsons: Uh-huh.

\* \* \*

[proceedings at the bench]

Appellant's Counsel: Hi, Mr. Shatto. During the group questioning section, we discussed an accused not testifying; and you indicated you had some responses to that. And what I want to talk to you about is in a situation where an accused didn't testify, do you think you might tend to hold that against the accused?

Mr. Shatto: If I was innocent—yes. If I was innocent, I would want to get on the stand and say I was innocent. I wouldn't have a problem with that is what I am saying. I would have a problem with somebody not wanting to get up and testify that he was. Why—if he's innocent would he not want to get up and say he was?

Appellant's Counsel: And that's what I wanted to talk to you about. Do—if that happened—now, innocence/guilt is not really at issue right here, just solely the accused not testifying. Do you think you would tend to hold it against a person if evidence was presented against him and then just sat, did not take the stand?

Mr. Shatto: Hold it against him?

Appellant's Counsel: In—

Mr. Shatto: It would put slight doubt in my mind, yes. Hold it against him, no. Wonder why he would not get up and say, "I'm innocent," yes.

Appellant's Counsel: And when I say "hold it against him"—I mean, you could understand why, if that was a concern of yours, in defending somebody. My gosh, I would want to know.

Mr. Shatto: I understand.

Appellant's Counsel: Do you know, with you sitting as a juror, a person would be at a disadvantage if they didn't testify?

Mr. Shatto: It would bother me, yes.

Appellant's Counsel: Once again, I'm not looking for any particular answer just—

Mr. Shatto: Sure. Sure. What's the question again?

Appellant's Counsel: Do you think that you—would a person be at a disadvantage if you sat in judgment of somebody if they did not—if they did not testify?

Mr. Shatto: Probably a slight disadvantage, yes.

Appellant's Counsel: Okay. Thank you, sir.

State's Counsel: May I question him? Mr. Shatto, of course, you're entitled to your own—you can't put your feelings aside, and you're not expected to. We want humans on the jury. But let's say that you heard all the evidence and you believed that I had failed in my burden of proof to prove beyond a reasonable doubt each element. Let's say there's one element of this offense that you did not believe beyond a reasonable doubt, okay?

Mr. Shatto: Okay.

State's Counsel: And you understand that if you—if I don't prove my case beyond a reasonable doubt, each element, then you're required to find the defendant not guilty. You understand that, right?

Mr. Shatto: Sure.

State's Counsel: Okay. If you believe that I had failed on an element, just simply because he did not testify, would you go ahead and find him guilty anyway even though you believe that I had failed in my burden of proof no matter—I don't know that there's ever been a juror walk out of the courtroom without saying, "Gee, why didn't they ask this question," or "I sure would have"—

Mr. Shatto: I was on a jury for two weeks about three years ago. It was a civil in Judge Ray Gayle's court and should have been criminal. I mean, it was long and drawn out. Two weeks.

State's Counsel: So, we're not asking you if you could remove every doubt or set all your feelings aside about it.

Mr. Shatto: Sure.

State's Counsel: But would you refuse to follow the law?

Mr. Shatto: *Oh, no.*

State's Counsel: Even if you believe I can't carry my burden?

Mr. Shatto: No, there would always be that doubt there. If I was innocent I would want to get up and say, "Look. I'm innocent."

State's Counsel: Would you vote according to the rules that the Court gives you, though?

Mr. Shatto: *Well, sure.*

State's Counsel: Okay. That's all I have, your Honor.

The Court: We'll see you back at 4:00. Thank you, sir. We're going to talk about these three all at once. So, Mrs. Parsons, come on up, please.

Appellant's Counsel: Mrs. Parsons, when—during the group questioning, we talked—I talked to you about an accused not testifying and my notes and memories show that you and I talked about that and you had a little problem with that. Do you think that if you were a juror in a criminal case and the Defendant, the person on trial, did not get up and say they didn't do it, doesn't testify at all, that they would be at a disadvantage to you as a juror?

Mrs. Parsons: Yes, sir.

Appellant's Counsel: Did you follow me? I put a lot of words out there.

Mrs. Parsons: Yes, sir, I did. I would feel a slight disadvantage, you know.

Appellant's Counsel: Do you think you would hold it against them if they didn't testify—"I want to hear from them. They ought to have to testify"?

Mrs. Parsons: No. I'm really not sure.

Appellant's Counsel: Would you be able to put it out of your mind that the person didn't testify?

Mrs. Parsons: Yes, sir.

Appellant's Counsel: So, it wouldn't bother you if an accused didn't testify?

Mrs. Parsons: Well, I feel like I'm contradicting myself now. Well, just to the point where, to me, it would make me feel there was some guilt if they didn't defend themselves.

Appellant's Counsel: And wouldn't—if there's some guilt, would that influence your—potentially influence your verdict?

Mrs. Parsons: Probably.

Appellant's Counsel: So, if a person didn't testify, you would say there must be some guilt there; and with that, if you thought there was guilt, would that potentially influence your verdict?

Mrs. Parsons: I feel it would.

Appellant's Counsel: Okay. I appreciate it, Mrs. Parsons.

State's Counsel: I do have some questions. Mrs. Parsons, you understand that a Defendant constitutionally has a right not to testify; and that's the law. And some people just have a really hard time with that, you know. But that is one of the rules that the Court gives you that you have, just have to put that out of your mind if he decides, his lawyer decides, or whomever decides he's not to testify. Anyway, you also understand that the State has the burden of proof. It's my responsibility to prove this case, nobody else but me. So, I have to remove reasonable doubt as to the crime itself that's charged, okay? Let's say that you believed that I failed to prove

my case to you beyond a reasonable doubt, okay? Would you find the Defendant guilty even though you believe I failed to prove beyond a reasonable doubt my case just because of the fact that he did not testify, or would you base your decision only on the evidence that's in front of you because that's what the Court requires you to do? You're entitled to your own personal feelings, but how you vote has got to be according to the rules the Court gives you.

Mrs. Parsons: *I would be fair with, you know, the evidence.*

State's Counsel: So, if I fail, could you not consider whether the defendant testified or not as long as you believe that I failed, according to the law?

Mrs. Parsons: *Uh-huh.*

State's Counsel: Okay.

(Emphasis added.)

### Venireperson Shatto

■ Although Mr. Shatto initially indicated that he would have a problem with a defendant who did not testify, he eventually stated that he would follow the law and the rules of the court. It is clear that if venire members testify unequivocally as to their ability to follow the law despite personal prejudices, the trial court does not abuse its discretion in overruling a challenge for cause on that basis. *Brown*, 913 S.W.2d at 580; *Massey v. State*, 933 S.W.2d 582, 585 (Tex. App.—Houston [1st Dist.] 1996, no pet.). However, a trial judge may properly overrule

a challenge for cause even if a venire member is not unequivocal as to the ability to follow the law despite personal prejudices. *Brown*, 913 S.W.2d at 579–80.[1] Even if Mr. Shatto vacillated about his ability to set aside his personal feelings on a defendant's decision to testify, we must defer to the ruling of the trial court.[2] *Id.* at 580–81 (when the venireperson vacillates or equivocates on the ability to follow the law, the reviewing court must defer to the trial court's judgment); *Fierro v. State*, 969 S.W.2d 51, 59 (Tex. App.—Austin 1998, no pet.). We overrule appellant's first point of error.

### Venireperson Parsons

■ Similarly, Mrs. Parsons initially indicated that she felt a defendant should testify. She stated that she might hold it against a defendant who did not testify. In response to the next question, however, Parsons stated that she would be able to put it out of her mind if a defendant did not testify. Parsons recognized that she was contradicting her previous statement and in her next two responses stated that, if a person did not testify, it could potentially influence her verdict. Finally, however, like Mr. Shatto, Mrs. Parsons stated that she would be fair with the evidence, follow the law, and would not consider whether the defendant testified.

Mrs. Parsons was unequivocal in her ability to follow the law, and the court did not abuse its discretion in overruling appellant's motion to excuse her for cause. We must

1. In *Brown*, venire member Stagner's last word on the subject was that she could only hope to follow the judge's instructions regarding an accused's failure to testify. The Court of Criminal Appeals stated in *Brown* that "while we might be inclined to agree with the Court of Appeals that the record reviewed as a whole portrays a venireperson who probably would not be able to set aside her personal biases against the law, we are nevertheless bound to defer to the ruling of the trial court in these circumstances. The Court of Appeals erred in failing to so defer." *Brown*, 913 S.W.2d at 579–80, 581.

2. The dissent questions Mr. Shatto's awareness, when he made his final statement on the issue, of the connection between his feelings about an accused's refusal to testify and the court's instruction on that issue. In reviewing the voir dire as a whole, we cannot agree. The trial

court read the jury instructions to the venire before voir dire began, specifically stating, "You must recognize the defendant's constitutional right not to testify, do not consider his failure to testify as any evidence against him." The prosecutor reminded the venire that as jurors, they were not to consider the defendant's right not to testify. Appellant's attorney reminded the venire that the law says that an accused does not have to testify, and the jury cannot consider that whatsoever. Mr. Shatto heard the colloquy between appellant's counsel and other venire members about the law that an accused does not have to testify. Finally, the express purpose of questioning Mr. Shatto at the bench was to discuss his feelings about an accused's right not to testify. In this context, we do not doubt Mr. Shatto's understanding of the question, "Would you refuse to follow the law?"

defer to the trial court's ruling despite Mrs. Parson's initial vacillation in her position. *Brown,* 913 S.W.2d at 579–80; *Massey,* 933 S.W.2d at 586. We overrule appellant's second point of error.

### Factual Sufficiency

■ In point of error three, appellant asserts the evidence is factually insufficient to sustain his conviction. In a factual sufficiency review, we view all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). The jury is the judge of the facts and therefore we must defer to the jury's findings and find the evidence factually insufficient only when necessary to prevent manifest injustice. *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App. 1997); *Borrego v. State,* 966 S.W.2d 786, 789 (Tex.App.—Houston [1st Dist.] 1998, no pet.).

A person commits sexual assault if, by threatening the use of force and violence, he intentionally and knowingly causes the penetration of the female sex organ of another person without her consent. TEX. PENAL CODE ANN. § 22.011 (Vernon Supp.1999). Appellant asserts that the evidence of a sexual assault is insufficient because complainant generally complied with his requests, apparently negating the "without consent" element of the offense.

Specifically, appellant points to the fact that complainant sat down on the floor and unbuttoned the first button of her jeans, that complainant did not say anything about the assault to the customer who entered the store, and that complainant suffered no bruises or other injuries. However, complainant's actions are explained by the fear of injury and death that was created by appellant's threat.

Investigator Matherne testified that some people, when faced with a sexual assault, comply so there will not be an escalation of force that results in injury or death. Complainant testified that she believed that appellant was capable of hurting her if she did not comply with his demands. She also stated that she told appellant she was okay so that he would not hurt her further.

Complainant testified that appellant said, "Don't make me hurt you," before he ordered her to remove her pants. She unbuttoned the first button of her jeans because appellant was a lot bigger than she was and she did not know what he would do to her. Complainant also testified that she sat down on the floor because she did not want to get hurt by being shoved down, and she did not think there was any way to physically stop appellant from harming her. Complainant further explained that she did not tell the customer about the assault because appellant was standing nearby and she was afraid appellant would hurt her or the customer.

Additional evidence supports complainant's statement that she did not consent to have intercourse with appellant. The jury heard complainant's screams during the offense from the store surveillance video. Complainant testified that she repeatedly told appellant "no" and that she did not consent to have intercourse with appellant. During trial, complainant identified photographs taken on the date of the offense by Kathryn Davis of the Angleton Police Department. The photographs showed bruises and swollen skin on complainant's legs and inner thighs. In addition, complainant called the police immediately after appellant left the premises.

Complainant's testimony is corroborated by the testimony of seven other witnesses. Sergeant R. Ramos of the Angleton Police Department was the first person at the scene after complainant called the police, arriving only minutes after the call. He testified that complainant was crying and very emotional. Officer D. White, with the Angleton Police Department, testified that he also responded to complainant's call, arriving at the store fifteen to twenty minutes after the call. He described the complainant as "very standoffish, very upset, and very devastated." He stated that this reaction was consistent with that of a rape victim.

Mary Phillips, a nurse at Danbury Hospital, told the jury that she met the complainant in the emergency room on the morning of the offense. Although she did not detect any

bruises during the examination, Phillips explained that complainant was quiet and withdrawn, behavior that is consistent with a person who has been raped.

Jon Matherne, an investigator with the Angleton Police Department testified that he met complainant at the hospital and that she appeared "shaken up" and "kind of dazed." Matherne stated that complainant's eyes were red and watery and that he believed she had been traumatized. Matherne also testified that complainant's demeanor was consistent with that of other assault victims.

The jury also heard the testimony of Edith Emerick, a criminologist who analyzed the results of the sexual assault kit used to examine complainant. Emerick testified that sperm was detected, indicating sexual contact. Rex West, appellant's coworker and roommate, testified that appellant left their motel room on the night of August 19, 1996. West stated that appellant returned around 4:00 a.m. the next morning and told West he had been at a bar shooting pool. West said that appellant stated he had met a woman at the bar and went home with her. West identified appellant from the store surveillance video taken on the morning of the offense.

Dennis Meeks was the last witness called by the State. Meeks testified that he was a regular customer at the convenience store and that he visited the store on August 20, 1996. Meeks testified that when he went into the store, he did not see the clerk. A few minutes later, complainant and appellant emerged from the back room. Meeks stated that he immediately recognized that something was wrong. He testified that complainant did not have her shoes on and that her blouse was not tucked into her jeans. He also said that complainant was usually outgoing, friendly, and very talkative, but on that morning she was upset or nervous, and not herself. Meeks stated that normally he did not have to describe the type of tobacco he wanted as he had purchased it from complainant on many occasions and she knew from his general request what to get for him. Meeks testified that on August 20, 1996, however, complainant had to ask him for details about his request.

Giving deference to the jury verdict and after examining all the evidence without viewing it in the light most favorable to the prosecution, we find the verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

We overrule appellant's third point of error.

We affirm the judgment.

O'CONNOR, Justice, dissenting.

I dissent from the panel's resolution of point of error one, regarding the motion to excuse a member of the venire. The appellant contends Shatto should have been excused for cause because Shatto said he would be unable to disregard the appellant's failure to testify. I agree.

The majority resolves point of error one by stating that, although Shatto initially indicated he would have a problem, he eventually stated that he would follow the law and the rules of the court. I disagree with that characterization of Shatto's statements.

Shatto repeatedly—seven times—said he would have a problem if a defendant did not testify. Then, without connecting the right not to testify to the court's instruction on that issue, Shatto was asked if he would refuse to follow the law. Not surprisingly, he said he would not. However, he was not told that he would have to put aside his prejudice against a defendant who refused to testify in order to follow the law. No upstanding citizen is ever going to state that he or she would refuse to follow the law.

Not only does the record not support the majority's characterization of Shatto's testimony, the authority cited by the majority does not support its result. Quoting from the majority opinion: "If venire members testify unequivocally as to their ability to follow the law *despite personal prejudices,* the trial court does not abuse its discretion in overruling a challenge for cause on that basis." *Brown v. State,* 913 S.W.2d 577, 580 (Tex.Crim.App.1996). There was no attempt in this case to find out if Shatto could follow the law *"despite personal prejudices ."* In *Brown,* after the venire member admitted his

prejudice against a defendant who would not testify, the court asked him the following:

[T]he Court would simply like to inquire if the Court instructs you of the Defendant's right not to testify and if you are instructed and in the event that the Defendant fails to testify, you cannot and must not consider that for any purpose as evidence against him.... [C]ould you follow the Court's instructions if you were so instructed by the Court that you could not consider that for any purpose or evidence of guilt.

*Id.* at 579.

After Shatto stated seven times that he would have a problem if the appellant did not testify, the assistant district attorney [ADA] merely asked the following:

ADA: So, we're not asking you if you could remove every doubt or set all your feelings aside about it.

Shatto: Sure.

ADA: But would you refuse to follow the law?

Shatto: *Oh, no.*

ADA: Even if you believe I can't carry my burden?

Shatto: No, there would always be that doubt there. If I was innocent I would want to get up and say, "Look. I'm innocent."

ADA: Would you vote according to the rules that the court gives you, though?

Shatto: Well, sure.

Here, neither the court nor the ADA asked Shatto if he could follow the law as related to the appellant's refusal to testify.[1] I would sustain point of error one.

Shatto, unlike Parsons, was not unequivocal in his ability to follow the law. I believe the court abused its discretion in overruling the appellant's motion to excuse him for cause. I would sustain the appellant's point of error one.

---

1. In contrast, the ADA, in a lengthy soliloquy, told venire person Parsons about the defendant's right not to testify, how it was the law, and would be included in the court's instruction.