Maria MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–97–00319–CR.

Court of Appeals of Texas,
El Paso.

April 22, 1999.

---

M. Clara Hernandez, El Paso County Public Defender, Penny Lee Andersen, Assistant Public Defender, El Paso, for Appellant.

Jaime E. Esparza, District Attorney, Karen L. Landinger, Assistant District Attorney, El Paso, for State.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

Maria Martinez appeals her conviction for unlawful delivery of a controlled substance in penalty group 1, to wit: cocaine of less than one gram. After a jury trial, Martinez was found guilty, and the court sentenced her to two (2) years confinement in a state jail facility. The imposition of the sentence was suspended by the court and appellant was placed on community supervision for five (5) years and required to complete 180 hours of community service and a drug offender education program. We reverse and remand.

### SUMMARY OF THE EVIDENCE

On June 4, 1996, Detective Luis Gerardo Jr., a Detective with the El Paso Police Department, entered Casa Martinez on 3825 North Piedras, El Paso, Texas. When he entered, Ms. Martinez asked him what he "was looking for." Detective Gerardo replied "a veinte," meaning twenty dollars worth of narcotics. Ms. Martinez told him to go to the rest room. Shortly thereafter, Alvino Soto came into the rest

room with Detective Gerardo and sold him the drugs. After the drug transaction took place, Detective Gerardo left Casa Martinez. While he was exiting, Ms. Martinez told him that "if next time I didn't recognize anybody, to go to her and she would go ahead and take care of me."

Ms. Martinez was subsequently arrested and charged with unlawful delivery of a controlled substance. After a jury trial, she was found guilty of the charged offense. This appeal follows.

## DISCUSSION

### Denial of Challenge for Cause

In her first point of error, Martinez contends that the trial court erred in denying her challenge for cause of prospective Juror Number 40, Leticia Yanez. The following exchanges occurred during voir dire while questioning Leticia Yanez, Juror Number 40:

[The Court]: There's no problem there. Does the State have any questions for her? I'm not sure what the—I think there was something about in response to one question, you indicated you might not be able to follow the law—this is my memory. You might not be able to follow the law if the State only proved four out of the five elements. You wouldn't—did you indicate something about that?

[Juror Number 40]: The law, you have to follow it no matter how it goes. The only thing that I say is if the State did give all the evidence or let's say four parts of the evidence, if the evidence is there, I believe they're guilty. But if the evidence is not there, I cannot say they're guilty.

[The Court]: What if they don't prove that fifth element? In other words, the State failed to offer any evidence that you found credible on the fifth element, could you follow the law?

[Juror Number 40]: Yes, sir. I have to follow the law no matter how—

[Mr. Cox]: Judge, I do have a few questions. Ms. Yanez, the example, the murder case.

[Juror Number 40]: Right.

[Mr. Cox]: The State proved that a person was killed—in fact, the first indictment says the defendant killed a person using a knife.

[Juror Number 40]: Uh-huh.

[Mr. Cox]: And you're a juror on the case. You sit through all the testimony. The evidence says the defendant killed that person, but there's no mention of a knife. There was—the only thing they proved was a rock. I believe you had indicated that you could not return a verdict of not guilty, is that correct?

[Juror Number 40]: Exactly. Uh-huh, that's correct.

[Mr. Havlovic]: Judge, we can explain that. If they ask those questions, the State needs to preface, those are the different elements. And then it should be prefaced that if the State has not proved up all of the elements, could you then follow the law and return a verdict of not guilty?

[Mr. Cox]: Judge, we just talked about the elements abstractedly. This juror—obviously, she had some questions as to that when we talked about concrete examples. She has indicated a stated position, which is very—

[The Court]: One at a time.

[Mr. Cox]: Which was very definite during the general voir dire, that she could not return a verdict of not guilty.

[Mr. Havlovic]: That's the same thing as if I get up here and I ask her, Well, if the State says that it was a blue shirt, and all the evidence shows it was a green shirt, could you then return a verdict?

[Mr. Cox]: If the shirt color was in the indictment, then they would have to prove it. A murder weapon would be an—

[The Court]: Well, restate the thing again, and let's just make sure—

[Mr. Cox]: Certainly. Ms. Yanez, forgive me. Let me try and break this up. If you were a juror in the trial of the case, and there is an indictment—remember we discussed that. It's a piece of paper that brings the defendant into court.

[Juror Number 40]: Right.

[Mr. Cox]: And it says this defendant did then and there kill this person using a knife, okay?

[Juror Number 40]: Right.

[Mr. Cox]: And you sit through all the evidence in the trial and you hear, yes, this defendant killed that person. The coroner says, absolutely, that person is dead. But you don't hear anything about a knife. The only thing the State presents proof on is that a rock was the cause of death.

[Juror Number 40]: And I still state that I would say the person is guilty, because it's death, the person is dead.

[Mr. Havlovic]: Judge, I think we need to explain that the knife is one of the elements, and the law and the jury charge is going to read that you have to prove each and every element.

[Mr. Cox]: Let me ask it another way.

[Mr. Havlovic]: Beyond a reasonable doubt.

[The Court]: Make sure she understands. But then, again, we come to the determination of following the law. Do you follow the law—whether you find this person guilty or not, because this person was found dead. How was he killed? There was no indication of a knife, but yet the fingerprints are there. It's not on the knife, but it's on the brick that he was killed—

[Juror Number 40]: I would have to say he's guilty.

[Mr. Cox]: She understands the issues. We make a motion.

[The Court]: She does there.

[Juror Number 40]: That's what I understand.

[The Court]: In other words—

[Mr. Havlovic]: Can I ask questions that will clear it out?

[The Court]: I'll give you one more chance.

[Mr. Cox]: It would be improper rehabilitation. This juror understands the question being propounded to her. The State has alleged the knife.

[The Court]: You understand that. If knife is in the indictment that causes the death of a person by use of a knife, and the State doesn't prove it's a knife, they prove it's a rock—

[Juror Number 40]: Okay. We're talking different. Doesn't prove—there's no proof with the knife. There's no proof. Then I would have to say different.

[Mr. Cox]: If I may?

[Juror Number 40]: The proof is not there?

[The Court]: Okay. Now, I've got it both ways.

[Mr. Cox]: To be sure we're understanding you. Once again, we're talking about a case—you're sitting on the jury. There's an indictment. This defendant caused the death of a person, specifically by using a knife.

[Juror Number 40]: Okay.

[Mr. Cox]: Those are the elements the State has to prove. You sit through the whole trial. You hear, yeah, this person is dead. The defendant killed him. They never used the knife. They used a rock.

[Juror Number 40]: So what you're saying is the proof has to be that there was a knife for this person to be guilty.

[Mr. Cox]: Exactly.

[Juror Number 40]: If the proof is not there.

[Mr. Cox]: That's one of the elements. Could you return a verdict of not guilty?

[Juror Number 40]: Yes.

[Mr. Cox]: Even if the person is dead?

[Juror Number 40]: Of course, because the proof is not there, then I wouldn't be following the law.

[The Court]: Yeah, but that's not what—let's not have any sidebar remarks here.

Okay. You're still making a motion?

[Mr. Cox]: Yes, Judge.

[The Court]: Well—

[Mr. Cox]: This juror had stated very clearly what her opinion was, and the rehabilitation engaged in by the State, to some extent, amounted to improper rehabilitation.

[The Court]: Well, I'll deny your challenge.

After completing the individual voir dire of prospective jurors, the trial court asked both counselors to submit their peremptory strikes. Before submitting the peremptory challenges for the defense, Mr. Cox, counsel for Martinez, explained his actions.

[Mr. Cox]: Yes, Your Honor. I have not tendered to the Court my peremptory challenges at this point, because since the Court overruled my challenge for cause to Leticia Yanez, who had indicated that she could not hold the State to its burden of proving all the elements, and then the State was allowed additional rehabilitation of her after she had stated that she had that view and that view could not be changed. I had to use a peremptory challenge strike on Ms. Yanez. Otherwise, I would have used that peremptory strike on Ms. Antoinette Stover. And as a result at this time, I'm requesting an additional peremptory strike.

The trial court denied the request for an additional peremptory strike.

After exercising the defense peremptory strikes, Mr. Cox observed that Juror Number 31 was seated as a juror.

[Mr. Cox]: There is no further objection other than to call the Court's attention that Juror Number 31, whom we had requested the additional peremptory for, is in fact on the jury.

[The Court]: 31?

[Mr. Cox]: 31 is the juror that I had indicated to the Court prior to submitting our strikes that I would have stricken if the Court had not overruled our challenge for cause and allowed the improper rehabilitation by the State of Juror Number 40.

■ In order to preserve error for a denial of a challenge for cause, the record must show that appellant asserted a specific challenge for cause on clearly articulated grounds, that she used a peremptory challenge on that venireman, that all of her peremptory challenges were exhausted, that she requested an additional peremptory strike which was denied, and that she was forced to take an objectionable venireman on the jury.[1] All the preservation prerequisites are satisfied in this case.

■ The question of whether a challenge for cause was wrongfully denied by the trial court is subject to an abuse of discretion standard.[2] Nothing is left to the discretion of the trial court when the venireperson is unequivocal as to their ability to follow the law.[3] If they testify unequivocally that they can follow the law despite personal prejudices, the trial court abuses its discretion in allowing a challenge for cause on that basis.[4] Likewise, if they testify unequivocally that they cannot follow the law due to their personal biases, the trial court abuses its discretion in failing to grant a challenge for cause on that basis.[5] However, when the venireperson

**1.** *Bigby v. State*, 892 S.W.2d 864, 882–83 (Tex. Crim.App.1994); *Perez v. State*, 960 S.W.2d 84, 86 (Tex.App.—Austin 1997, no pet.).

**2.** *Garcia v. State*, 919 S.W.2d 370, 401 (Tex. Crim.App.1994).

**3.** *Brown v. State*, 913 S.W.2d 577, 580 (Tex. Crim.App.1996).

**4.** *Id.*

**5.** *Id.*

vacillates or equivocates on their ability to follow the law, the reviewing court must defer to the trial court's judgment.[6] We find the testimony of Juror Number 40 to be an unequivocal statement that she can follow the law. The trial court correctly denied the challenge for cause on that basis and there was no error. Appellant's first point of error is overruled.

### Extraneous Offenses

In her second point of error, Martinez maintains that the trial court erred in admitting evidence of extraneous offenses at the guilt/innocence phase of her trial. She believes that the evidence of extraneous offenses was inadmissible based on several theories: (1) the State did not provide her with sufficient notice before using the evidence; (2) the evidence was irrelevant; and (3) the evidence was more prejudicial than probative.

If the opponent of extraneous offense evidence objects on the grounds that the evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the proponent must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value.[7] Extraneous offenses are admissible if relevant to a material issue and their probative value is not "substantially outweighed by the danger of unfair prejudice...."[8] Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.[9] It may, however, be admissible for other purposes, such as proof of intent[10] or may be relevant and admissible to rebut a defensive theory.[11]

As long as the trial court's ruling was within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld.[12] "Background contextual evidence," to be admissible, must have as its justification, a reason from the inexhaustible laundry list and that reason must then pass the Rule 403 balancing test.[13] We find that the trial court did find that the background evidence was more probative than prejudicial. We also hold that the trial court's ruling was within the "zone of reasonable disagreement." Consequently, we uphold the trial court's ruling. Appellant's second point of error is overruled.

### Testimony of John Rudd

In her third point of error, the appellant questions the trial court's decision to allow John Rudd, a Department of Public Safety laboratory supervisor, to testify to the chemical analyses performed by other persons. Martinez believes that this testimony was hearsay and violated her right to confront the witnesses against her.

Mr. Rudd testified that he did not perform the tests on the substances that were believed to be cocaine. He only supervised the testing. When the State attempted to introduce Mr. Rudd's opinion of what the substance was, the following exchange took place:

Q [Mr. Havlovic]: Mr. Rudd, do you have an opinion as to what that substance is in laboratory number L4E–25807?

A [Mr. Rudd]: Yes, sir.

Q: And—

---

6. *Id.*

7. *Santellan v. State*, 939 S.W.2d 155, 168 (Tex.Crim.App.1997).

8. Tex.R. Evid. 403 & 404(b).

9. Tex.R. Evid. 404(b).

10. *Id.; White v. State*, 958 S.W.2d 460, 466 (Tex.App.—Waco 1997, no pet.).

11. *Hughes v. State*, 962 S.W.2d 89, 92 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

12. *Santellan*, 939 S.W.2d at 169.

13. *Jones v. State*, 962 S.W.2d 158, 165 (Tex. App.—Fort Worth 1998, no pet.).

[Mr. Cox]: Could we just get a running objection on that ground, Your Honor? [14]

[The Court]: Yes, you may.

[Mr. Cox]: Thank you, Your Honor.

Q [Mr. Havlovic]: And what is that substance?

A [Mr. Rudd]: That the powder did in fact contain cocaine. And as I stated, the net weight was .34 grams.

Out-of-court statements offered at trial to prove the truth of the matter asserted are inadmissible hearsay unless the statements fall within a hearsay exception found in the statutes or rules of evidence.[15] Even though the statement may be admissible as an exception to the hearsay rule, it was the burden of the State, as a proponent of the evidence, to invoke the exception.[16] An unusual quirk in the hearsay debate occurs when the State tries to admit hearsay evidence through Rule 803(8).[17] In *Cole v. State*,[18] the Texas Court of Criminal Appeals held that a Department of Public Safety chemist's report is, in the absence of the chemist who prepared the report, inadmissible as matters observed by other law enforcement personnel.[19] This decision was clarified in *Aguilar v. State*.[20] In *Aguilar*, the Texas Court of Criminal Appeals held that a chemist may rely on lab reports prepared by subordinates in forming an opinion as an expert.[21]

In the present case, the State had the burden of proving by a preponderance of the evidence that the *Aguilar* exception applied. To successfully apply this exception, the State must demonstrate to the trial court that the person about to give the testimony "qualifies as an expert by reason of his knowledge, skill, experience, training or education." [22] Additionally, the State must show that the reports relied upon by the expert are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject...." [23] By admitting the testimony, the trial court implicitly found that the State carried its burden of proving Mr. Rudd was an expert, that the reports relied upon are of a type reasonably relied upon by experts, and that the evidence was admissible as an exception to the hearsay rules.[24] As an appellate court, we may not disturb the trial court's decision absent an abuse of discretion.[25] If the implicit findings by the trial court as to whether or not Mr. Rudd was an expert and whether the reports relied upon are of the type reasonably relied upon by experts were incorrect, then the trial court abused its discretion not only in its implicit findings, but also in not sustaining the appellant's hearsay objection under *Cole*.

In our case, the State never tendered Mr. Rudd as an expert, the parties

**14.** Previously, Mr. Cox objected on two grounds: (1) hearsay; and (2) denial of the appellant's right to confront witnesses against her.

**15.** *See* TEX.R. EVID. 801, 802.

**16.** *Kroopf v. State*, 970 S.W.2d 626, 629 (Tex. App.—Beaumont 1998, no pet.) (citing *Moreno v. State*, 858 S.W.2d 453 (Tex.Crim.App. 1993)).

**17.** *See generally* Betty Marshall, *Hearsay*, STATE BAR OF TEX. PROF. DEV. PROGRAM, ADVANCED CRIMINAL LAW COURSE M, M–26–27 (1997).

**18.** 839 S.W.2d 798, 806 (Tex.Crim.App.1990).

**19.** *Id.; Canida v. State*, 842 S.W.2d 293, 294 (Tex.Crim.App.1992).

**20.** 887 S.W.2d 27, 29–30 (Tex.Crim.App. 1994).

**21.** *Id.*

**22.** *See Reid v. State*, 964 S.W.2d 723, 729 (Tex.App.—Amarillo 1998, pet. ref'd).

**23.** TEX.R. EVID. 703; *McBride v. State*, 862 S.W.2d 600, 609 (Tex.Crim.App.1993).

**24.** *Alvarado v. State*, 912 S.W.2d 199, 215 (Tex.Crim.App.1995); *see also Henderson v. State*, 822 S.W.2d 171, 173–74 (Tex.App.— Houston [1st Dist.] 1991, no pet.).

**25.** *Alvarado*, 912 S.W.2d at 215.

did not stipulate that Mr. Rudd was qualified as an expert, nor did the trial court expressly find that Mr. Rudd was an expert. In responding to defense counsel's hearsay objection, the State asserted that, "I think we laid the proper predicate for him to come testify as an expert. And he can testify to his opinion as to what a substance is, and he can review any of the records that were used." The court overruled the hearsay objection. By admitting the evidence, the trial court implicitly found that Mr. Rudd had been qualified as an expert.

This finding is not supported by the record. The only evidence of Mr. Rudd's qualifications as an expert are his length of service at the Department of Public Safety, his position with the Department, and the number of trials that he has testified as an expert witness. Appellant correctly notes that the State offered no evidence regarding Rudd's education, training, or experience in the field. Similarly, no evidence was provided regarding the qualifications of the lab technicians who actually performed the tests.[26] Finally, there is no indication that the hearsay evidence was the type of evidence relied upon by experts.

The State wholly failed to carry its burden of establishing the Mr. Rudd was an expert witness. Thus, the State necessarily failed to establish its right to rely on the hearsay exception carved out by *Aguilar*. The testimony of Mr. Rudd was inadmissible hearsay, and consequently, the trial court erroneously allowed hearsay evidence to be heard by the jury.

*Harm Analysis*

 We review this error according to Texas Rule of Appellate Procedure 44.2 because an error in the admission of evidence affects a substantial right.[27] A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.[28] Upon a finding that a substantial right has been violated, we employ the following analysis as laid out by the San Antonio Court of Appeals:

> With the foregoing in mind, we conclude that we will apply rule 44.2(b) to an error in the admission of evidence by first asking: what substantial rights of the defendant are implicated by the admission of the erroneous evidence? Then, for each right implicated by the error, we will ask: did the error affect the jury's verdict? To answer this question, we will consider: (1) the source of the error, (2) the nature of the error, (3) whether or to what extent it was emphasized by the State, (4) the probable collateral consequences of the error, (5) how much weight jurors probably placed on the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. If after considering these factors, the answer to the question is 'no,' we will deem the error harmless and conclude that the substantial rights of the defendant were not affected. If the answer to the question is 'yes,' we will consider the same factors to determine the extent the error affected the jury's verdict. If the error only slightly affected the verdict, we will deem the error harmless. But if the error affected the jury's verdict more than slightly, we will conclude that the substantial rights of the defendant were adversely affected. With this result, we will deem the error harmful, and reverse and remand.[29]

**26.** *Jones v. State*, 611 S.W.2d 64, 66 (Tex. Crim.App.1980).

**27.** Tex.R. Evid. 103(a); *Smith v. State*, 968 S.W.2d 452, 460–61 (Tex.App.—Amarillo 1998, pet. filed).

**28.** *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557, 1572 (1946)).

**29.** *Garza v. State*, 963 S.W.2d 926, 930 (Tex. App.—San Antonio 1998, no pet.) (footnote omitted).

The admission of Mr. Rudd's hearsay testimony implicates Martinez's right to a fair trial.[30] According to the standard of review outlined by the San Antonio Court of Appeals, we must now determine whether the error adversely affected this right using the factors discussed above.[31] The State introduced the hearsay evidence; therefore, it was the source of the error. The nature of Mr. Rudd's testimony was unqualified expert testimony identifying the substance at issue as cocaine. The error was not emphasized by the State because the prosecutors mentioned Mr. Rudd's testimony only once during closing argument. Instead, the State focused on the testimony of the investigating officer, Detective Gerardo. One of the probable collateral consequences of the error could be that the State may be relieved of proving an element of the offense, namely that the substance was cocaine.

The fifth element, how much weight jurors probably placed on the error, is nearly impossible to measure. We must consider the very persuasive testimonial evidence of the defendant's guilt provided by Detective Gerardo.[32] He bought what he believed was cocaine. The substance that he bought tested positive for cocaine in a field test.

Nevertheless, we find that if we were to declare the error harmless it would greatly encourage the State to repeat it with impunity. By having a supervisor, unqualified as an expert, testify to lab results conducted by other persons precludes cross-examination on chain of custody, methods used to perform the tests, and impeachment of the witness. Almost every defensive challenge that the appellant might make at trial against the proper witness is side-stepped in this way. Moreover, the State could introduce unqualified expert testimony without the limiting language of *Cole v. State*. We cannot allow the State this exemption from the hearsay rules. Ac-cordingly, we have grave doubts about the error that warrants reversal. We sustain appellant's third point of error.

### CONCLUSION

We reverse and remand.

---

**30.** *Id.* at 931.

**31.** *Id.*

**32.** *Cf. Robinson v. State,* 971 S.W.2d 96, 99 (Tex.App.—Beaumont 1998, pet. ref'd).