In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00054-CR


______________________________




JERIAMISS BAXTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 114th Judicial District Court


Smith County, Texas


Trial Court No. 114-087-06




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Jeriamiss Baxter appeals his conviction by a jury for sexual assault. The indictment alleged
that on or about July 15, 2003, Baxter did then and there intentionally or knowingly cause the
penetration of the female sexual organ of M.D. by Baxter's sexual organ, without the consent of
M.D. The jury assessed punishment at twenty years' imprisonment and the trial court sentenced
Baxter consistent with the jury's verdict. On appeal, Baxter's sole point of error is that the evidence
is factually insufficient to sustain his conviction. We disagree with this contention and affirm the
judgment.

STANDARD OF REVIEW

 In a factual sufficiency review, we review all the evidence, in a neutral light and determine
whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and
preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. Roberts
v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Marshall v. State, 210 S.W.3d 618, 625 (Tex.
Crim. App. 2006); Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Clewis v.
State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). The standards for the review of the legal
sufficiency of the evidence to sustain a conviction and the factual sufficiency are different. In a
legal sufficiency review, the reviewing court is required to defer to the jury's determination of the
credibility and weight of the evidence; a factual sufficiency review permits the reviewing court to
substitute its judgment for the jury's on these questions "albeit to a very limited degree." Marshall,
210 S.W.3d at 625. In our review, we must evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible, if allowed into evidence. Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999).

EVIDENCE AT TRIAL

 After a friend failed to pick her up on the night of July 15, 2003, M.D. left the residence of
some relatives and began walking home. Shortly after she began to proceed, M.D. encountered
Baxter, who was riding a bicycle. Baxter approached M.D. and began to accompany her as she
walked, talking to her; this continued for several blocks. When Baxter initially approached M.D.,
M.D. was considerably closer to the residence of her relatives than to her house, but M.D.
nevertheless made no attempt to return to her relatives' house to seek safety there. 

 M.D. testified that soon after he fell in beside her, Baxter began to talk about oral sex. 
During this walk, Baxter and M.D. were near a Tyler police station and passed by a large blue sign
indicating the location of that police station. M.D. saw her husband drive by as she was walking
along with Baxter, but made no attempt to flag her husband down to seek his assistance. M.D.'s
husband testified he did not notice anything unusual about M.D. when he drove by her except that
she was walking with an unknown man. As M.D. and Baxter entered a dark alley, Baxter threw his
bicycle to the ground and approached M.D., causing M.D. to attempt flight. Baxter grabbed M.D.
while putting his hand over her mouth; he then threw M.D. to the ground atop a fire ant hill and
started performing oral sex on her. Baxter then proceeded to engage in vaginal intercourse with
M.D. against her will and without her consent. M.D. testified she was looking for someone to help
her get away from Baxter during the entire time she was walking with him. 

 Manuel Velasco, who had observed M.D. and Baxter walking together, heard M.D.
screaming, got into his car, and drove his car into the alley. Velasco testified that he saw Baxter
leaving the scene with a bicycle and that M.D. appeared to be frightened, so he drove her to her
home, where she called the police. Velasco testified that although he had handed M.D. his cell
phone in the alley, M.D. did not call the police until she returned home and told her husband what
had happened.

 During the assault, M.D. suffered numerous ant bites from the denizens of the fire ant hill
upon which she was lying. Tracy Shubert, a sexual assault nurse examiner (SANE) , noted ant bites
on M.D.'s thighs and legs which were too numerous to count. The examiner also noted there was
an abrasion with small cuts to the top of M.D.'s right foot. Shubert testified that M.D. was "very
withdrawn and crying" at the time of the examination. A vaginal swab of M.D. taken by Shubert
during the examination revealed semen consistent with Baxter's DNA. The SANE discovered
neither any bruising to M.D.'s inner thighs or buttocks nor any vaginal trauma. 

 Officer Herbert Hayter, who was the first police officer to respond to the call, testified that
M.D. was "very, very upset." 

BAXTER'S CLAIM OF CONSENSUAL SEX

 Baxter argues that no rational juror could have found beyond a reasonable doubt that Baxter
committed sexual assault, maintaining that the evidence is factually insufficient to show that M.D.
did not consent to the sexual conduct in which the parties engaged. A person commits the offense
of sexual assault if the person "(1) intentionally or knowingly: (A) causes the penetration of the anus
or sexual organ of another person by any means, without that person's consent . . . ." Tex. Penal
Code Ann. § 22.011(a)(1)(A) (Vernon Supp. 2007). 

 Baxter claims that the evidence concerning lack of consent is insufficient because M.D. failed
to (1) return to her relatives' house when Baxter began to accompany her, (2) seek help when she had
the opportunity during the walk, (3) elicit her husband's aid when he drove by her on the street,
(4) seek aid at the Tyler Police Department prior to the incident, and (5) use Velasco's offered
cellular telephone to call the police at the scene of the incident after it occurred. Baxter cites as
further evidence the lack of bruising of M.D. as detected by the examiner and the fact that the alley
in which the incident occurred led away from--not toward--M.D.'s home (evidence, he maintains,
that M.D. and Baxter were jointly looking for a private area in order to engage in sexual
intercourse). 

 According to Baxter, M.D. consented to the sexual activity and accused Baxter of rape
merely to escape the consequences of her infidelity after having been discovered.

 Baxter argues that if M.D. had wanted to seek help, she had several opportunities to obtain
help which she did not pursue and that M.D. did not call the police until she decided she could
escape the consequences of her infidelity with a stranger by claiming she was raped. Finally, Baxter
claims that his own behavior was inconsistent with having raped M.D., asserting that he did not flee
the scene upon Velasco's arrival but, rather, calmly walked away and allowed Velasco to get a good
look at his face. Baxter argues it is likely that M.D. had screamed because the fire ants were biting
her, not because she was being assaulted. 

 Baxter cites Robinson v. State, 989 S.W.2d 456 (Tex. App.--Houston [1st Dist.] 1999, pet.
ref'd), in support of his argument that the evidence is factually insufficient. In Robinson, the
defendant engaged a female attendant of a convenience store in conversation for about an hour. Id.
at 457. When the attendant walked into a back room, Robinson followed her, told the attendant
"[d]on't make me hurt you" and ordered the attendant to remove her pants. Id. The attendant
unbuttoned the top button, Robinson removed her pants, and Robinson engaged in sexual intercourse
with the attendant. Id. at 457-58. As he was leaving, Robinson asked the attendant if she would call
the police and the attendant responded "no." Id. at 458. When Robinson was gone, the attendant
locked the store and called the police. Id. The attendant's inner legs and thighs were bruised and
swollen. Id. at 462. Robinson argued on appeal that the attendant had consented by unbuttoning her
pants. Id. The First District Court of Appeals found the evidence to be factually sufficient and
affirmed the conviction. Id. at 463. Baxter argues that the evidence in this case is "much weaker"
than the evidence in Robinson because Baxter did not explicitly or implicitly threaten Baxter with
physical harm. We disagree. 

ANALYSIS

 It is undisputed that a sexual act occurred; the relevant inquiry is whether the victim
consented to the sexual activity. The Texas Penal Code provides that a sexual assault is without the
victim's consent if the actor compels the person to submit or participate by the use of physical force
or violence. Tex. Penal Code Ann. § 22.011(b)(1) (Vernon Supp. 2007). In this case, M.D.
testified that Baxter grabbed her, covered her mouth with his hand, and threw her to the ground atop
a fire ant bed. As such, there was evidence that Baxter actually used physical force, even though he
did not first threaten to use physical force. See Gonzales v. State, 2 S.W.3d 411, 415 (Tex.
App.--San Antonio 1999, no pet.) (holding a rational trier of fact could have found use of force
when defendant immobilized the victim with his weight). Further, M.D. testified that she did not
consent to the sexual acts and that she "was just crying the whole time, hoping that somebody would
have heard me screaming when I was running." During the sexual assault examination, M.D. told
Shubert she had told her assailant "no" and screamed during the rape. See Brown v. State, No. 06-05-00096-CR, 2005 Tex. App. LEXIS 8891 (Tex. App.--Texarkana Oct. 28, 2005, pet. ref'd) (mem.
op., not designated for publication). 

 When viewed in a neutral light, the evidence supporting the verdict is not so outweighed by
the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or
manifestly unjust. The fact that M.D. did not seek help prior to the rape does not preclude a finding
that the sexual activity was nonconsensual. M.D. testified that she was unfamiliar with the area and
did not see the police station sign. Shubert testified that based on her training and experience, the
lack of vaginal trauma does not necessarily mean the individual was not raped. Further, the fact that
M.D. did not call the police until she arrived at a safe, familiar location (her home), does not suggest
that M.D. consented to the sex. A jury could conclude such an action was reasonable under the
circumstances. Although fleeing the scene is often a sign of guilt, the mere fact that Baxter says that
he did not flee is not substantial evidence that he was innocent. Further, the evidence that Baxter
calmly walked away is controverted. M.D. testified that Baxter left "as fast as he could." Although
Velasco testified he saw Baxter leaving with his bicycle, Velasco's testimony does not specify that
Baxter was calm or walking slowly. The jury alone judges the credibility of witnesses, the weight
to be given their testimony, and the reconciliation of evidentiary conflicts. Whitaker v. State, 977
S.W.2d 595, 598 (Tex. Crim. App. 1998). The great weight and preponderance of the evidence does
not indicate that M.D. consented. The evidence is factually sufficient to sustain the conclusion of
the jury.

 For the reasons stated, we affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: November 12, 2007

Date Decided: November 21, 2007


Do Not Publish



s. The Estate of John Self and reads, "COMES
NOW Defendant, The Estate of John Self ("Estate")." Additionally, "Defendant Estate" is
referenced throughout the answer, while there is no mention of the personal representative
within the answer filed.