**Opinion issued November 25, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00539-CR

———————————

**ROBERT NELSON LAUDERDALE, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1382005**

---

## MEMORANDUM OPINION

Appellant Robert Nelson Lauderdale, Jr. was charged by indictment with aggravated sexual assault. After Lauderdale testified at trial that the complainant had consented to performing oral sex, the State introduced evidence that within four days before he committed the charged offense, Lauderdale had sexually

assaulted two other women and attempted to assault a third. A jury found Lauderdale guilty and assessed his punishment at 60 years' confinement. On appeal, Lauderdale challenges the sufficiency of the evidence and contends that the trial court erred in admitting the extraneous offense evidence and in submitting an improper limiting instruction on extraneous offenses. We affirm.

## Background

The complainant, A.C., testified that as she walked across the parking lot to her Greenspoint area apartment around 2:00 a.m., she walked past Lauderdale, who said, "Hey," and pointed a gun at her. A.C. testified that she froze, put her hands up, dropped her purse, and backed up. Lauderdale, still pointing the gun at A.C., grabbed her arm, walked her across the parking lot, and forced her into a vacant apartment.

Still holding the gun, Lauderdale told A.C. to "go into the bedroom and take [her] clothes off." A.C. initially refused but Lauderdale pointed the gun and said, "Do it or I'll f-ing kill you." A.C. began to disrobe, and she testified that she thought Lauderdale was going to kill her.

Lauderdale lied down on the floor naked and set the gun down, but still within his reach. Lauderdale ordered A.C. to perform oral sex and A.C. bit his penis. Lauderdale then hit her on the head with the gun. A.C. knocked the gun out of Lauderdale's hand, and Lauderdale told A.C. that he was going to shoot her.

2

When Lauderdale went to pick up the gun, A.C. "dove through the window" to escape. Wearing only her bra, A.C. ran to her aunt's apartment in the complex while yelling for help.

Debra Allen, who lived at the same apartment complex but did not know A.C. or Lauderdale, also testified. Allen saw Lauderdale place his hands around A.C.'s neck and thought the two were in a relationship and having a fight. Allen saw Lauderdale pull A.C. toward the vacant apartment and heard A.C. say, "No. Stop." Lauderdale was holding an object in his hand but she could not "make out what it was."

Allen lived in the apartment directly above the vacant apartment. Allen testified that A.C. was "scared" when she was standing outside of the apartment. Allen called 911 and heard "moaning and crying" coming from the vacant apartment. When she heard broken glass, she looked out the window and saw A.C. running away, wearing only her bra, and heard A.C. yelling for help. Allen testified that Lauderdale could not catch up with A.C. because she was too far ahead of him. Allen testified that Lauderdale then went back to the vacant apartment and was looking for something on the ground, but ran away again when he heard police sirens.

Linda Mahoney, a sexual assault nurse examiner, testified that she treated a crying and "very, very upset" A.C. Mahoney testified that A.C. reported having

3

been "approached by a man with a gun, taken to a vacant apartment, made to disrobe, then perform oral sex on him." A.C. reported that she bit his penis, then he beat her, then she "jumped out of the first floor window and ran to her aunt's house naked."

Officer J. Simmons of the Houston Police Department investigated the assault. When Officer Simmons saw A.C., A.C. was "panicked and hysterical," and she was naked, except for her bra, and bloody. Officer J. De Los Santos of the Houston Police Department's sex crimes unit also testified that A.C. appeared to be injured from an assault.

Lauderdale testified that the sexual encounter was consensual. He contacted A.C. after seeing her Craigslist advertisement for sex, and A.C. told him to meet her at the apartment complex around 2:00 a.m. Lauderdale testified that he took a BB gun with him because he always carried one for protection. Lauderdale testified that his hand was around A.C.'s neck but that she walked willingly with him to the vacant apartment. Lauderdale testified that A.C. bit his penis because she was going to rob him. According to Lauderdale, he hit A.C. twice with his hand and three times with the gun because A.C. was going to rob him. Lauderdale testified that he left the scene because he thought that A.C. was going to find someone else to bring back to the apartment and hurt him.

To rebut Lauderdale's testimony, the State presented evidence of three extraneous offenses. Before the jury heard the extraneous offense evidence, the trial court instructed the jury: "you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with this offense, if any alleged against him in the indictment and for no other purpose." Lauderdale objected: "I would request something more specific other than the entire list under 404(b). I don't believe that these things can be shown to satisfy the offer as to every element listed or every instance listed under 404(b)." The trial court overruled Lauderdale's objection.

The State presented evidence that Lauderdale committed sexual assaults on two women and attempted a sexual assault on a third, all within four days before the charged offense. The three women testified that Lauderdale abducted them in the Greenspoint mall parking lot by approaching them with a gun and then demanding that they go to a nearby motel. He threatened to kill two of the women and forced them to perform oral and vaginal sex. The third woman testified that Lauderdale abducted her but then let her leave the motel because she recognized him as a former classmate. All three women reported the offenses and identified Lauderdale as their abductor.

After the State presented extraneous offense evidence, Lauderdale testified that all three of the women willingly accompanied him and that the two who claimed to have been sexually assaulted by him had consensual sex with him.

At the charge conference, Lauderdale requested that the Rule 404(b) limiting instruction be modified to instruct the jury that it could consider the extraneous offense evidence only to determine "intent." He argued that the limiting instruction should not refer to any of the other 404(b) purposes. The trial court overruled Lauderdale's objections.

## Discussion

In three issues, Lauderdale contends that the evidence was insufficient to support his conviction and that the trial court erred in admitting evidence of extraneous offenses and in overruling his objections to the jury charge.

## Sufficiency of the Evidence

### A. Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc). The standard is the same for both direct and circumstantial evidence cases. *King v.*

*State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) (en banc) (citing *McGoldrick v. State*, 682 S.W.2d 575, 577 (Tex. Crim. App. 1985)).

We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We therefore resolve any inconsistencies in the evidence in favor of the verdict, *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991) (en banc), and "defer to the jury's credibility and weight determinations." *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

## B. Applicable Law

A person commits the offense of aggravated sexual assault if he intentionally or knowingly causes the penetration of the mouth of another person with his sexual organ without that person's consent and with the use of physical force and violence and the threat of death or serious bodily injury. TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(ii), (a)(2)(A)(i) (West Supp. 2014).

## C. Analysis

We conclude that sufficient evidence supports Lauderdale's conviction. First, the testimony of the complainant, standing alone, is sufficient to support a conviction for sexual assault. *See Jensen v. State*, 66 S.W.3d 528, 534 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). Here, A.C. testified that she did not

consent to perform oral sex on Lauderdale. She said no when Lauderdale told her to take her clothes off and Lauderdale threatened to kill her if she did not place his penis in her mouth.

Second, A.C.'s testimony is corroborated by that of an eyewitness, Allen. Allen testified that A.C. appeared scared of Lauderdale and that Lauderdale placed his hand around A.C.'s neck in the parking lot and pulled her toward the vacant apartment while A.C. said, "No. Stop." Allen testified that Lauderdale had something in his hand but that she could not tell what it was. She also heard moaning and crying from the vacant apartment where Lauderdale assaulted A.C.

Third, the testimony of the nurse examiner and police officers support the conviction. The nurse examiner testified that A.C. reported that a man approached her with a gun and forced her to perform oral sex. Officer Simmons testified that when he met with A.C., she was panicked and hysterical, and both Officer Simmons and Officer De Los Santos testified that A.C. appeared to have been sexually assaulted. *See Johnson v. State*, 227 S.W.3d 180, 186 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (evidence that when investigating officer met with complainant, she was crying, "had a hard time talking," appeared "very, very scared," and was "shaken up" supported conviction for aggravated sexual assault).

Lauderdale contends that the evidence is insufficient because the jury heard strong evidence of his innocence. For example, he argues that the jury could have

made the plausible inference that A.C. consented to the sexual act based on his testimony that A.C. was a prostitute who bit him in order to rob him and that the three other women all consented to go to a motel with him. But the credibility of Lauderdale's testimony was a factor for the jury to consider in weighing the evidence, and we defer to the jury's resolution of the conflicting evidence. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (we afford almost complete deference to jury's determinations of credibility); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (appellate courts resolve any inconsistencies in the evidence in favor of the verdict); *Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (stating "the jury had the ability to observe the witnesses carefully, to hear the fear or violence projected from each witness, and to evaluate the credibility of each witness and the overall sufficiency of the evidence on the issue of consent").

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that Lauderdale intentionally or knowingly caused the penetration of A.C.'s mouth by his penis by threatening to use force and violence to cause death or serious bodily injury to her and that A.C. believed Lauderdale had the ability to execute the threat. Accordingly, we hold that the evidence was legally sufficient to support the judgment. *See Johnson*, 227 S.W.3d at 186–87 (evidence sufficient to support aggravated sexual assault conviction

where complainant testified that she did not know appellant, appellant abducted her at gunpoint, pointed gun at her at all times, threatened to kill her and appellant testified that complainant willingly entered his car and that she consented to have sex); *Robinson v. State*, 989 S.W.2d 456, 462–63 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (evidence sufficient to support "without consent" element of sexual assault where evidence that complainant repeatedly told appellant "no," did not consent to intercourse, screamed during offense, and immediately called police).

We overrule Lauderdale's first issue.

## Extraneous Offenses

In his second issue, Lauderdale contends that the trial court erred in admitting evidence of extraneous offenses. He contends that the extraneous offenses were inadmissible because they were not factually similar to the charged offense and because their prejudicial effect outweighed their probative value.

## A.     Standard of Review

We review a trial court's ruling on admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse a trial court's ruling on evidentiary matters unless the decision was outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If the trial

court's ruling can be justified on any theory of law applicable to that ruling, the ruling will not be disturbed. *De La Paz*, 279 S.W.3d at 344 (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982) ("When a trial court's ruling on the admission of evidence is correct, although giving a wrong or insufficient reason, this Court will not reverse if the evidence is admissible for any reason.")).

## B.    Rule 404(b)

Evidence of extraneous crimes, wrongs, or acts is not admissible at the guilt-innocence phase "to prove the character of a person in order to show action in conformity therewith" but is admissible to prove other matters, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" if the accused is given reasonable notice of the State's intent to introduce the evidence. TEX. R. EVID. 404(b) (extraneous evidence must have probative value beyond character conformity to be admissible). Rebuttal of a defensive theory is also "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). But to be probative, the extraneous offense evidence admitted to rebut a defensive theory must be similar to the charged offense. *See Plante v. State*, 692 S.W.2d 487, 492–93 (Tex. Crim. App. 1985).

Here, the State offered evidence of the abductions of three women and sexual assaults of two of them to rebut Lauderdale's defensive theory that A.C.

consented to sexual acts and that he lacked the requisite intent to commit aggravated sexual assault. *See Moses*, 105 S.W.3d at 626. Lauderdale introduced this defensive theory through his own testimony. The State's theory for admissibility of the extraneous offense evidence in rebuttal was that the extraneous offenses were sufficiently similar to the charged offense to be probative on the issue of intent. The State explained to the trial court that Lauderdale abducted the other three women under circumstances similar to those the State alleged were present when Lauderdale committed the charged offense.

We conclude that the similarities between the extraneous offenses and the charged offense are sufficient to make the extraneous offenses probative of Lauderdale's intent to sexually assault A.C. A.C. testified that Lauderdale abducted her in the apartment complex's parking lot, brandished a gun, threatened to kill her if she did not perform oral sex, and hit her in the head with a gun several times. The other three women each testified that Lauderdale abducted them from the Greenspoint mall parking lot for the purpose of sexually assaulting them, brandished a gun, and threatened to kill them if they did not have sex with him. Accordingly, the trial court did not err in concluding that the extraneous offenses were sufficiently similar to the charged offense to be probative evidence of Lauderdale's intent to commit a sexual offense against A.C. *See* TEX. R. EVID. 404(b); *Moses*, 105 S.W.3d at 627 (trial court does not abuse discretion in

admitting extraneous offense evidence that rebuts defensive theory); *see also Johnson v. State*, 932 S.W.2d 296, 302 (Tex. App.—Austin 1996, pet. ref'd) (when defendant raises defensive theory that charged offense was not intentional, intent is put at issue).

## C.    Rule 403

"However, even if the evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Moses*, 105 S.W.3d at 626 (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (en banc)). Under a Rule 403 analysis, we consider: (1) the strength of the extraneous offense evidence to make a fact of consequence more or less probable; (2) the potential of the extraneous offense to impress the jury in some irrational but indelible way; (3) the time during trial that the State requires to develop evidence of the extraneous misconduct; and (4) the need by the State for the extraneous evidence. *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

The first factor weighs in favor of admissibility. The extraneous offense evidence was probative of Lauderdale's intent to commit the sexual offense against A.C. because it showed that Lauderdale had abducted three other women and sexually assaulted two of them without their consent just days before the charged

offense.  *See Blackwell v. State*, 193 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (first factor weighs in favor of admissibility where extraneous evidence was probative of appellant's intent to commit sexual offense by showing he had similar intent with victims of extraneous offenses).

Under the second factor, we examine the extraneous offense evidence for its potential to impress the jury in some irrational but indelible way.  Before the State presented the extraneous offense evidence, the trial court instructed the jury that "you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident of the defendant, if any, in connection with this offense, if any alleged against him in the indictment and for no other purpose."  Similarly, "the charge specifically limited the extraneous offense evidence to issues other than character conformity," therefore "correctly instruct[ing] the jury to limit its use of the extraneous offense evidence to issues that were properly before it"—Lauderdale's intent.  *See Blackwell*, 193 S.W.3d at 16.  The extraneous offense evidence was likely to make a strong impression on the jury given its nature, but in light of the limiting instructions, we conclude that the second factor does not weigh in favor of or against admission.  *See id.* ("The trial court's instructions to the jury are a factor to consider in determining whether the jury considered the extraneous-offense evidence improperly, i.e., as character conformity evidence, or properly, as

14

evidence to rebut a defensive theory or some other permissible reason under rule 404(b).").

Under the third factor, we evaluate the time required to develop evidence of the extraneous evidence. Here, the amount of time the State devoted to developing the extraneous offense evidence was significant. The State presented that evidence through the testimony of 14 witnesses, including the three women who were abducted, four police officers, two sexual assault examiners, three DNA analysts, one HPD criminalist, and one of the abducted women's friends. Their testimony, combined, spanned more than 200 pages of the 529-page reporter's record of the trial. Accordingly, we conclude that this factor weighs against admissibility. *Cf. Blackwell*, 193 S.W.3d at 18 (third factor neutral and favored neither admissibility nor exclusion of evidence where four witnesses' testimony of extraneous offenses was not "unduly lengthy").

Under the fourth factor, we examine the State's need for the extraneous evidence. The State needed the extraneous evidence to prove intent because Lauderdale had testified that A.C. willingly went to the vacant apartment with him and consented to the sexual act. This factor weighs in favor of admissibility. *See id.* (fourth factor weighed "heavily in favor of admissibility" because State needed extraneous evidence to prove appellant's guilt where State's only witnesses were complainant, complainant's grandmother, and two police offers, who testified

15

about their investigation after complainant reported to them, and appellant had presented evidence of his defensive theory that he was framed).

Considering all four factors together, we conclude that the probative value of the extraneous offense rebuttal evidence was not substantially outweighed by the danger of unfair prejudice, and that the trial court did not abuse its discretion in admitting evidence of the extraneous offenses. *See Moses*, 105 S.W.3d at 627 (trial court's admission of extraneous evidence is reviewed for abuse of discretion).

We overrule Lauderdale's second issue.

## Jury Charge

In his third issue, Lauderdale contends that the trial court erred in refusing to limit the court's extraneous offense instruction to instruct the jury that it could consider the extraneous offense only for the purpose of determining intent.

### A. Standard of Review

In analyzing a jury-charge issue, our first duty is to decide if error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003) (en banc). If there was error and the appellant objected to the error at trial, reversal is required if the error is "calculated to injure the rights of the defendant," meaning that there is "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

## B.    Analysis

At the charge conference, Lauderdale objected to the Rule 404(b) limiting instruction that allowed the jury to consider the extraneous offense to determine motive, opportunity, preparation, plan, knowledge, identity, or absence of mistake or accident and requested that only "intent" remain in the instruction.  The trial court denied Lauderdale's request and instructed the jury:

> [I]f there is any evidence before you in this case regarding the defendant's committing an alleged offense or offenses other than the offense alleged against him in the indictment in this case . . . you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident of the defendant, if any, in connection with the offense, if any alleged against him in the indictment and for no other purpose.

Lauderdale contends that instructing the jury that it was permitted to consider the extraneous offenses for purposes other than intent was improper because the State failed to demonstrate that the extraneous offense evidence was probative of a plan, motive, opportunity, preparation, knowledge, identity, absence of mistake or accident.

Lauderdale relies upon *Daggett v. State*, 187 S.W.3d 444, 453–55 (Tex. Crim. App. 2005), in support of his argument.  The *Daggett* court held that the trial court erred in instructing the jury "to consider the extraneous offense evidence only for the limited purpose of 'determining the common plan or scheme' of the defendant because no evidence at trial showed that the extraneous offense was the

plan or scheme of the defendant and the extraneous offense was only admissible to rebut 'appellant's blanket statement of good conduct with minors,' an issue not included in the jury charge." *Blackwell*, 193 S.W.3d at 16 (citing *Daggett*, 187 S.W.3d at 454). But here, unlike in *Daggett*, the State had presented extraneous offense evidence that was probative of Lauderdale's intent to commit the charged offense. *See id.* Accordingly, *Daggett* does not support Lauderdale's argument.

Further, this court has held that it is not error to submit an instruction that includes Rule 404(b) purposes that were not raised by the evidence, provided the instruction includes the 404(b) purpose about which the State did present evidence. *See Blackwell*, 193 S.W.3d at 16 (as long as instruction includes 404(b) purpose raised by evidence, inclusion of other 404(b) purposes "amounted to surplusage that the jury could readily disregard because those issues were not pertinent to the trial"). We held in *Blackwell* that "although not as narrowly tailored to the specific issues involved as it could have been, the charge correctly instructed the jury to limit its use of the extraneous offense evidence to issues that were properly before it—the intent and motive of appellant to commit the offense against [the complainant]." *Id.*

This case is like *Blackwell*. The limiting instruction here included intent, which was raised by the evidence, and other 404(b) purposes that were not, but the other purposes "amounted to surplusage" and their submission did not constitute

error by the trial court. *See id.* Further, the charge in this case instructed the jury to consider the extraneous offense evidence for no purpose other than the Rule 404(b) purposes. It therefore "by implication instructed [the jury] not to consider the extraneous offense evidence as substantive evidence of appellant's guilt." *See id.* Accordingly, we hold that the trial court did not err in overruling Lauderdale's objections to the extraneous offense limiting instruction. *See id.*

We overrule Lauderdale's third issue.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Justices Massengale, Brown, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

19